# JACK LEWIS

*vs.*

# COMMERCIAL CASUALTY INSURANCE COMPANY.

*Insurance Policy—Automobile Liability—Notice of Accident—Waiver.*

Where an automobile liability policy provided that "upon the occurrence of an accident or loss" covered by the policy, the assured should give immediate written notice to the company, and that if a claim were made upon the assured on account of such accident, he should give like notice, the use of the expression "or loss" did not dispense with the necessity of immediate notice upon the occurrence of an accident, the "loss" referred to being the injury or damage caused by the accident, and not the claim of loss nor the pecuniary loss suffered. pp. 478-481

That, in spite of the failure to give the insurer immediate notice of the accident, as required by the automobile liability policy in suit, the insurer's counsel told the insured that he would be present at the hearing before the Industrial Accident Commission of a claim on account of the death which was the basis of the suit on the policy, and that such counsel told insured not to worry, and that he (the counsel) would look after him, did not involve a waiver of the requirement of notice. pp. 481-483

*Decided January 17th, 1923.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

Action by Jack Lewis against the Commercial Casualty Insurance Company of Newark, New Jersey. From a judgment for defendant, plaintiff appeals. *Affirmed.*

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Walter L. Clark,* with whom were *M. Henry Goldstone* and *Soper, Bowie & Clark* on the brief, for the appellant.

*Edward L. Ward,* with whom was *Edwin W. Wells* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This appeal involves the proper construction of a clause of an automobile liability policy issued by the appellee, the Commercial Casualty Insurance Company, to the appellant, Jack Lewis.

The clause of the policy referred to is as follows:

"Upon the occurrence of an accident or loss covered by this policy, the assured shall give immediate written notice thereof, with the fullest information obtainable at the time to the company or its duly authorized agent. If a claim for damages is made upon the assured on account of such accident, the assured shall give like notice thereof with full particulars."

The policy was issued on the 21st day of August, 1918, and on the 13th day of November, of the same year, while the policy was in force, the plaintiff's chauffeur, a brother, while driving the insured car about the employer's business, injured one Thomas Fitzpatrick, who subsequnetly, on the 8th day of January, 1919, died from the injuries so received.

Fitzpatrick, at the time of the accident which resulted in his death, was working for the Crane Company, which carried a compensation insurance with the Globe Indemnity Company. After appropriate proceedings before the State Industrial Accident Commission, compensation was awarded the widow of Fitzpatrick, which was paid by the Globe Indemnity Company and thereafter, on the 4th day of Janu-

ary, 1919, the following demand was made by said company upon the owner of the insured automobile:

"Mr. Jack Lewis,

"Baltimore, Md.

"Dear Sir:

"On November 13th, 1918, an automobile belonging to you and operated by Joseph Lewis, struck pipe being handled by Thomas Fitzpatrick, an employee of Crane Company, in front of 624-629 W. Pratt St. He was injured by this accident and is now about to die. The Globe Indemnity Company, insurers of Crane Company, will hold you responsible for this accident and loss and wish you to consider this as notice of such.

"Yours truly,

"(Signed) Harry H. Wilson, Atty."

Upon the receipt of the above letter, Lewis called the appellee over the 'phone at its office in the American Building, telling it of the demand upon him, and in reply thereto, he was requested to send the letter to the company, which he did. Thereafter Mr. Wells, of the firm of Wells & McCormick, at that time counsel for the appellee, called upon the appellant at his office in the city, and was told by Lewis that he was not at home at the time of the accident, and was therefore unable to tell him anything about it, but referred him to his brother, "the chauffeur," and from him Mr. Wells obtained a sworn statement as to how the accident occurred. In this statement he said:

"I was going west on Pratt Street at a speed of about twelve miles an hour, and when I approached the plant of Crane & Company I noticed freight cars standing in the centre of the street, and also noticed a team standing near the freight car which was being loaded. This team blocked the right side of the street, and I was forced to pull over to the left side to pass around the first two cars, and after passing these two cars my way was again blocked by another team, so that I had to pull in between the second freight car

and the third car which was separated from the first by a distance of twenty or twenty-five feet. While passing this third car on the right, a man who was handling pipes on the freight train shoved a pipe into the side of my machine, striking it right in the centre, bending the stay to the top, and the vibration of the jar broke my windshield. I stopped immediately and somebody called that the man on top of the freight train had been hurt. This man had been thrown down into the car, but when I saw him he had been assisted to the ground and was standing up, with his nose bleeding. I asked him if he was hurt very bad and whether he wanted to go to a hospital, and he claimed that it was not necessary to take him to a hospital, as they had their compensation doctor to treat him. I then went on about my business. I informed my brother of the situation when he returned from New York about a week or ten days after November 13th, and explained that the car had been damaged and spoke of the man's injuries and nose bleeding."

Attached to the above statement obtained on the 10th day of January, 1919, is the following memorandum, signed by the appellant:

"I have read the attached statement made by my brother, Mr. Joseph Lewis, and same is correct."

The appellant in his evidence stated: "In the first conference, after he (Wells) got the letter from the insurance company, he came down and spoke about the case. He said he would get busy and go over to the State Accident Commission and try to be present at the hearing, on the second occasion he came back with this statement. He said, 'I looked into the matter; there is nothing to do; they are trying to put one over on you, if anything happens we will look after you; don't worry.' This was on the second visit from Mr. Wells and he had that statement and Mr. Wells asked me to sign it, which I did. I have had no further conference with him except the information I received after signing

the statement that I had no case against the company and they were not responsible for any liability which I think you have a letter also refusing counsel fee for the case."

The *"information"* to which he refers was the following letter:

"January 28, 1919.

"Mr. Jack Lewis,
    "1411 E. Baltimore St.,
        "City.
"Dear Sir:

"At the request of our client, the Commercial Casualty Company, we beg to return herewith original of letter addressed you by Mr. Harry H. Wilson, of the Globe Indemnity Company.

"We are further instructed by the Commercial Casualty Company to formally notify you that on account of your failure to give the Commercial Casualty Company immediate notice of accident, to which it was entitled under the terms of the policy, the matter of this claim is not covered by your policy No. AV-87065, or by any insurance in this company. On account of your violation of the condition of the policy as to the giving of notice, it will be incumbent upon you to protect your interests in connection with any claim that may be made against you either by the Globe Indemnity Company or the representatives of the injured.

"Yours truly,
            "(Signed)  Wells & McCormick."

Thereafter, the exact date is not shown, suit was instituted by the Globe Indemnity Company against the appellant for the sum of twenty-five thousand dollars, and the papers that were served upon him in connection with that suit were sent by his attorney, Mr. Goldstone, to the appellee, enclosed in a letter, dated the 28th day of August, 1919, asking it to defend the suit upon the condition that no responsibility should rest upon his client for the payment of fees in defend-

ing the action, and should it decline to defend upon the condition named, it was asked to return the papers. The appellee replied, denying all liability under the policy for the loss claimed, but agreed to defend the suit with the understanding that it should not be liable for any judgment that might be obtained thereon, or for the payment of any damage or loss on account of the accident upon which the suit was brought. This proposition was not accepted by the appellant and, the appellee declining to defend the suit, except upon the condition stated by it, the appellant assumed to defend the suit himself. But before the case came to trial, it was compromised by the appellant paying to the Globe Insurance Company, the sum of five hundred dollars. This amount, together with the cost of suit and fees paid to counsel in defense of it, was demanded of appellee and, upon its refusal to pay the same, the suit in this case was brought.

At the conclusion of the trial, in which the facts we have stated were adduced, three prayers were offered by the defendant. The effect of each was to take the case from the consideration of the jury. We need, however, to consider but one of the prayers granted. By it the jury was instructed "that from the uncontradicted evidence in this case, the plaintiff failed to give immediate notice to the defendant of the accident in question, within a reasonable time after he had been informed of its occurrence, and, therefore, the verdict must be in favor of the defendant."

The counsel for the appellant, in their brief, speaking of this prayer, said:

> "The defendant's third prayer required the jury to find from the uncontradicted evidence that plaintiff failed to give the company immediate notice of the accident. If this court should hold that, under the language of the notice clause, the plaintiff should have given the company immediate notice of the accident, and further hold that there was no waiver of notice, then the effect will be to prevent any recovery by the plaintiff for either his loss, or his expenses."

The uncontradicted evidence discloses that the accident, from which injury and death resulted, occurred on the 13th day of November, 1918. The appellant, who was not at home at the time, returned a week or ten days thereafter, when he was told by his brother, the chauffeur, of the accident, his brother saying "that he told him of the situation, and explained that the car had been damaged and spoke of the man's injuries and nose bleeding." But though told of the accident, and injuries to the man caused thereby, he gave no notice thereof to the appellee until after January 4th, 1919, six weeks or more thereafter, when told by letter from Wilson, attorney for the Globe Indemnity Company, insurer of the Crane Company, for whom Fitzpatrick was working at the time of the accident, that he would be held responsible for the accident and the loss resulting therefrom.

The notice given at such time by the appellant to the appellee, as conceded by appellant's counsel in their brief, was not in compliance with the provisions of the policy, if it were meant thereby, that notice of the accident was to be immediately given to the insurer by the insured.

Therefore, the inquiry to be made is, was it the intention of the parties to this insurance contract, that immediate notice was to be given by the appellant to the appellee of the accident, and the injury or damage caused thereby, resulting in possible loss to the plaintiff.

The policy provides that, "upon the occurrence of an accident or loss covered by the policy, the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company, or its duly authorized agent." It is claimed by the appellant, that because of the alternative expression "accident *or loss*" contained therein, no immediate notice need be given either of the accident, or loss, resulting from any injury or damage caused by such accident, but that such notice may be deferred until a claim is made upon the assured for such loss or damage; although the provision expressly states that "upon

the occurrence of the *accident or loss,* the assured shall give immediate written notice *thereof,* with the fullest information obtainable *at the time."*

The necessity of giving notice applies both to the occurrence of the accident and to any loss covered by the policy, resulting from any injury or damage caused at the time by the accident. In other words, immediate written notice of loss, covered by the policy, resulting from injury and damage caused by the accident, as well as notice of the accident, which is practically inseparable therefrom, is to be given to the insurer and with it is to be furnished, "the fullest information obtainable at the time" of the accident. The *loss,* of which notice is to be given at such time, does not refer to the *claim of loss* made by the injured party, for that is cared for in the provision immediately following, where it is stated, "after a claim for damage (or loss) is made upon the assured on account of such accident, the assured shall give like notice thereof, with full particulars"; nor does it refer to the ascertained pecuniary loss suffered by the assured, for at such time the amount of such loss cannot be ascertained. The meaning of the word "loss," as used in the clause under construction, is the *injury* or *damage* caused by the accident, for which the insurer may, under the provisions of the policy, be liable, though at such time the extent of the loss may not be ascertainable.

The notice in the first provision of the clause is to precede the notice required in the second provision of the same clause, and it was not intended that the first notice to be given should be disregarded or deferred to the time when the notice required under the second provision of the clause is to be given, that is, the notice of the claim of loss.

The assured, by the first provision of the clause, was to give immediate written notice of the accident or *loss* resulting from injury or damage caused by the accident, and in giving that notice, he was required to furnish the fullest information obtainable at the time of the accident, not only as

to how the accident occurred but also of the injuries from which any loss, covered by the policy, resulted.

The use of the words, "or *loss,*" in the policy, might be dispensed with, without materially affecting the meaning of the contract, for if the requirement was that immediate notice of the accident only should be given, "with the fullest information obtainable" such notice, we think, should contain a statement of the injury and damage caused by the accident, and therefore, the addition of the word "loss," stated in the disjunctive, adds, we think, little if anything to the meaning of the contract, as intended by the parties thereto.

It may be said that the wisdom of requiring an immediate written notice of the accident or loss resulting therefrom, covered by the policy, with the fullest information obtainable at the time of the accident, is apparent, as was recognized by the court in *McCarthy* v. *Rendle,* 230 Mass. 35, in which it is said: "The occurrence of an accident and injury, however slight, may result in litigation, even in protracted litigation. It is the experience of every defender of causes that it is a matter of first importance to become possessed of all material facts, and of the names and residences of all known witnesses at the earliest possible moment, as facts may be forgotten or distorted and witnesses may go beyond reach. It is an important provision in that it is 'for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid.' "

The wording of the policy in *Anoka Lumber Co.* v. *Fidelity & Casualty Co.,* 63 Minn. 286, 30 L. R. A. 689, cited by the appellant in support of his contention, differs much from the wording of the policy in this case. The notice clause in that case was that "the assured upon the occurrence of an accident and upon notice of an accident, and upon notice of any claim on account of an accident, shall give immediate notice, in writing, of such accident or claim." And the contention made by the defendant was that the provisions contained in the policy required notice to be given whenever an

accident occurred and also that another notice was to be given when any claim on account of an accident was made, while the plaintiff contended that no notice was to be given thereunder until there had been both an accident and a claim by reason thereof. The Court adopted the contention of the plaintiff and we think very properly so. The notice to be given was upon the occurrence of the accident *and* upon notice of a claim on account of such accident. In the very nature of things, both events would not occur at one and the same time. The notice of claim of loss would follow the accident, and if *both* were to occur before the notice was to be given, it would necessarily be deferred until the notice of the claim of loss were given. But not so here, the notice in this case is to be given immediately upon the occurrence of an accident or loss resulting from injuries caused thereby, and we think it may be properly said that *"loss,"* as here understood, occurred with the happening of the accident; and by the express provisions of the policy, notice thereof in connection with the accident should have been given by the appellant immediately after being informed of it.

What we have said of the Anoka Lumber Company's case, in distinguishing it from the case before us, also applies to the case of *Grand Rapids Electric Light & P. Co.* v. *Fidelity & Casualty Co.,* 111 Mich. 148, cited by the appellant, where the language of the policy is practically the same.

The contention is also made that, if there was a breach of the contract of insurance on the part of the appellant in not giving the notice required by the policy, the same was waived by the appellee by the acts and conduct of its agents in connection therewith.

The first intimation that the appellee had of the accident, so far as the record discloses, was that received from the appellant over the 'phone, telling it of the demand made upon him by the Globe Indemnity Co. by letter of January 4, 1919. What was said between them over the 'phone does not

appear in the record, except the direction of the appellee that the appellant send to it the letter last mentioned. This letter was sent as directed, but just when is not shown from the record. The record discloses no other communication between the parties themselves.

After the conversation over the 'phone, Mr. Wells, counsel for the appellee, called upon the appellant to learn something of the accident, and was told by him to see his brother, the chauffeur, which he did, and obtained from him a sworn statement.

The appellant stated in his evidence that Mr. Wells told him that he, Mr. Wells, would try to be present at the hearing before the State Industrial Accident Commission, when Fitzpatrick's case came before it; and that he also told him that he was of the opinion that "they were trying to put one over on him" but not to worry, he would "look after him." · Mr. Wells, he said, paid him two visits, one before he obtained the sworn statement from his brother and one afterwards. Upon one of these visits, which one is not clear from the evidence of the appellant, the above related conversation occurred. He, however, stated that the next information received from either the appellee or its counsel was the letter of January 28th, from Wells, in which he said that at the request of his client, the appellee, he was returning to him the Globe Insurance Company's letter that Lewis had sent to it, and further stated that he was instructed by his client to formally notify him "that on account of your failure to give the Commercial Casualty Company immediate notice of accident to which it was entitled, under the terms of the policy, the matter of the claim is not covered by your policy," and that it was incumbent upon him to protect his interest in connection with the claim made against him. In this letter he was not only told of the company's refusal to acknowledge liability under the policy for the claim made against him, but he was told why they so regarded it as not binding upon it—because he had not given the required notice.

The above conversation between the counsel and the appellant, under the circumstances alluded to, fails to disclose, we think, an intention on the part of the defendant to waive any of its rights under the policy, including the right to successfully contest the claim of the plaintiff, because of the alleged breach of the contract by him. In our opinion, what was said at the time was not said for the purpose of influencing the conduct of the plaintiff, and we fail to see how it could have influenced him to the prejudice of any right accruing to him under the policy. The appellant had already forfeited his right to rely on the policy by his failure to comply with the requirements of notice. As was said in *McCord* v. *Masonic Casualty Co.*, 201 Mass, 476, and quoted in *Boston Elevated Railway* v. *Maryland Casualty Co.*, 232 Mass. 253, this is not a case "where the plaintiff has been induced to forego doing something which he might have done had he not ben lulled into a false belief that nothing more was necessary. It is not like the case of a defect of form in a notice where the time for giving notice has not expired." There is nothing, disclosed by the record, in the acts or conduct of the appellee or its agents, to show that it intended to waive the terms of the policy, and relinquish the defendant's right to rely on its provisions.

As we fail to discover error in the ruling of the court in granting the above mentioned prayer, taking the case from the jury, the judgment below will be affirmed.

*Judgment affirmed, with costs.*