FLETCHER SAVINGS AND TRUST COMPANY *v.* AMERICAN
SURETY COMPANY OF NEW YORK ET AL.

[No. 13,997.   Filed March 4, 1931.   Rehearing denied May 27, 1931.
Transfer denied July 3, 1931.]

*John F. Beals* and *Donald S. Morris*, for appellant.
*Henry M. Dowling*, for appellee.

NEAL, J.—This is a proceeding by appellant to recover, by virtue of its contract of indemnity, from appellee American Surety Company of New York for loss suffered by appellant on account of the dishonest acts and embezzlement or theft of funds by one of the employees of appellant.

The trial court sustained the demurrer of appellee to appellant's second amended complaint. The appellant refused to plead further, and judgment was entered accordingly.

The only error relied upon for reversal is that the court erred in sustaining appellee's demurrer to the second amended complaint.

The amended complaint alleged, in substance, the

following facts: The appellant was a corporation organized under and pursuant to the laws of the State of Indiana, with its principal place of business in the city of Indianapolis, and was engaged at all times herein mentioned in carrying on a business authorized and permitted by the laws of Indiana relative to loan, trust and safe deposit companies, and that, as a part of its business, it received money, checks and other orders for the payment of money from its customers, held such money on deposit, paid checks drawn against such deposit accounts, and maintained a savings department; that appellee American Surety Company of New York is a corporation and was engaged at all times herein mentioned in a general suretyship business for compensation; that appellant, at and during all the time and dates mentioned herein, employed many persons in conducting and transacting its business, and, desiring to protect itself against loss caused and occasioned by any dishonest or criminal act or acts of its employees, or through larceny, theft, misplacement or destruction of currency, bullion, promissory notes, checks or similar securities in which appellant had a pecuniary interest, or which it held as collateral, or as bailee, trustee, custodian, agent, or in any other capacity, applied to appellee American Surety Company for a bond or contract indemnifying appellant against such losses or any of them; that, on April 9, 1923, appellee American Surety Company did execute and deliver to appellant its written contract or bond, which it designated and called "Banker's Blanket Bond," wherein and whereby appellee American Surety Company agreed and bound itself to indemnify appellant against any losses as hereinbefore set out and enumerated not in excess of $100,000; that a copy of the bond is attached to the complaint, made a part thereof, and marked "Exhibit A"; that the bond so executed as aforesaid remained in full force and effect from the date of its execution up to and including

February 15, 1926; that, on January 28, 1925, appellee American Surety Company executed and delivered to appellant a modification of the provision of the bond, which was accepted by appellant; that the modification is made a part of the complaint and marked "Exhibit B"; that appellant paid the named appellee a valuable consideration for the bond, and, when it was delivered by appellee, it was accepted by appellant, and thereafter, it paid yearly premiums to said appellee, which covered all charges due appellee by virtue of the bond up to and including February 15, 1926; that appellant had in its employ from April 9, 1923 to February 15, 1926, and thereafter, one Lloyd L. Orwig as a teller in appellant's savings department, to receive currency, checks and other valuable orders for the payment of money, which persons desired to deposit in the savings department of appellant, and, as such teller, he frequently had in his possession large sums of money so deposited and belonging to appellant and while so employed by appellant, and, while in possession of the sums and amounts, or some of them, Lloyd L. Orwig fraudulently and unlawfully stole and embezzled various sums, all of which were a part of the money belonging to appellant, all of which he was in possession of as an employee of appellant, whereby the sums were lost to appellant; that, upon February 15, 1926, the total or aggregate amount of money so taken, stolen or embezzled by Orwig was $3,300; that no part of the sum has been paid to appellant by Orwig, nor by any one else; that on account of and by the theft and embezzlement of Orwig, the sum was, on and prior to February 15, 1926, but not prior to April 9, 1923, wholly lost to appellant, and thereby the appellant has suffered a loss of $3,300, with interest thereon, from the dates of taking to the date of trial of this action; that, on December 26, 1926, appellant was informed that during the month of December, 1926,

Orwig, as such employee, had misappropriated or embezzled a sum of appellant's money, to wit, about $1,200, and that no part of the sum was embezzled prior to the month of December, 1926, and that the sum was the full amount of such embezzlement by Orwig; that, on December 30, 1926, at about 3 p. m., appellant was informed and discovered that Orwig had embezzled or misappropriated an additional sum of about $3,300 of appellant's money prior to the month of December, 1926, and that the sum or some part thereof had probably been so embezzled by Orwig upon and prior to February 15, 1926; that, on December 31, 1926, appellant notified appellee American Surety Company of New York, in writing, of a probable loss under the Banker's Blanket Bond heretofore mentioned and described; that, on January 20, 1927, appellant filed with the named appellee its written proof of the loss; that, on May 9, 1927, appellant filed with appellee a more detailed proof of the loss occurring upon and prior to February 15, 1926, all in the form and manner as provided by the terms of the Banker's Blanket Bond, and demanded that appellee American Surety Company of New York reimburse appellant for the loss, as provided by the terms and conditions of the Banker's Blanket Bond; that appellee American Surety Company of New York neglected, failed and refused to reimburse appellant for the loss or any part thereof and still so fails and refuses; that, by false entries and statements, forged checks and other tricks and devices, Orwig hid and concealed his embezzlement from appellant, and appellant has been unable to discover the particular dates when each of the appropriations or embezzlements occurred or the separate amount of each of same, but that, on February 15, 1926, and at the time of the expiration of the bond, the aggregate amount of the embezzlement of appellant's money by Orwig was $3,300; that the various

items of the aggregate amount were embezzled by Orwig on and prior to February 15, 1926, and during the time the bond was in force, and that no part of the sum was embezzled or taken by Orwig at any other or different time; that appellant, through its employee Orwig, suffered loss in the sum and amount of $3,300 on and prior to February 15, 1926, but not prior to April 9, 1923; that all of the loss occurred and was sustained by appellant during the time appellee's bond was in full force and effect; that appellant has not been reimbursed for the loss or any part thereof; that appellant upon its part has performed and complied with all of the terms and conditions of the bond and the modification thereof attached to and made a part thereof, and appellee refuses to abide by and comply with the terms of the bond, and fails and refuses to indemnify and reimburse appellant for its loss suffered and sustained to its employee Orwig as promised and agreed in the bond, to the damage of appellant in the sum of $5,000.

The bond, omitting caption and signatures, is as follows: "In consideration of an annual premium the American Surety Company of New York, hereinafter referred to as the Underwriter, hereby undertakes and agrees to indemnify Fletcher Savings and Trust Company, and/or Fletcher Joint Stock Land Bank of Indianapolis; and/or Sixteenth Street State Bank, and/or East Washington Street State Bank, and/or Roosevelt Avenue State Bank, as their respective interests may appear, hereinafter referred to as the Insured, and hold it harmless, to an amount not exceeding One Hundred Thousand ($100,000) Dollars from and against any losses sustained by the insured subsequent to noon of the date hereof and while this bond is in force and discovered by the Insured subsequent to noon of the date hereof and prior to the expiration of twelve (12) months after the

termination of this bond as provided in Condition 11 hereof, that is to say:

"(A) Any loss through any dishonest or criminal act of any of the Insured's officers, clerks, or other employees employed in, at or by any of the Insured's offices covered hereunder during the currency of this bond (all of such officers, clerks and other employees being hereafter referred to as Employees), wherever committed and whether committed directly or by collusion with others.

"(B) Any loss of money, currency, bullion, bonds, debentures, script, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities, in which the Insured has a pecuniary interest or which are held by the Insured as collateral or as bailee, trustee, custodian, agent, or in any other capacity, and whether or not the insured is liable therefor (all of such money, currency, bullion, bond, debentures, script, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar security being hereafter referred to as Property) through robbery, larceny (whether common law or statutory), burglary, theft, hold-up, misplacement, or destruction, whether effected with or without violence, or with or without negligence on the part of any of the Employees while the Property is within any of the Insured's office[s] covered hereunder, or within any recognized places of safe deposit within the United States, or within the premises of any of the Insured's Banks, or lodged or deposited by the Insured in the ordinary course of business or exchange, conversion or registration with the issuers thereof, or with any agents of such issuers, or with any person employed to procure or manage the exchange, conversion or registration thereof.

"(C) Any loss of Property through misplacement, destruction, robbery, larceny (whether common law or

statutory), hold-up or theft, while such Property is in transit within the United States and in the custody of any of the Employees or any partner of the Insured, or through negligence, or otherwise, on the part of any of the Employees having custody of the Property while in transit as aforesaid; which transit risk to begin immediately upon receipt of such Property by the transporting Employee or Employees or partner and to end immediately upon delivery thereof at destination.

"(D)  Any loss through the payment, whether received over the counter or through the clearing house or by mail, of forged or raised checks or (genuine) checks bearing forged indorsements or the establishment of any credit to any customer on the faith of such checks.

"The foregoing agreement is subject to the following conditions and limitations:

"(1)  The offices of the Insured which are covered hereunder are located as follows:

"Main Office—Pennsylvania and Market Streets, Indianapolis, Indiana.

"West Indianapolis Branch, 1233 Oliver Avenue, Indianapolis, Indiana.

"West Street Branch, North West corner Washington and West Streets, Indianapolis, Indiana.

"Roosevelt Avenue State Bank, 1533 Roosevelt Avenue, Indianapolis, Indiana.

"If the Insured shall give to the Underwriter notice that it desires any other office to be covered hereunder, then if the Underwriter shall give its written consent thereto, such office shall be covered hereunder from and after the receipt of such notice, and an additional premium shall be paid.  No notice to the Underwriter of an increase during any premium year in the number of Employees at any of the offices covered hereunder need be given, and no additional premium need be paid unless

such increase shall result from the merger or combination with the Insured of another banking institution.

"(2) This bond does not cover:

"(a) Any loss effected by means of forgery, except when covered by Insuring Clauses (A) and (D) hereof.

"(b) Any loss resulting from riot, civil commotion (unless such loss results while the Property is in transit in the custody of an employee or partner as aforesaid, and unless when such Employee or partner was dispatched there was no knowledge on the part of the Insured or any of its officers or partners of such riot or civil commotion) or insurrection, military or usurpt power, or from windstorm, tornado, earthquake, volcanic eruption or similar disturbance of nature.

"(c) Any loss resulting from any act or acts by any director of the Insured, other than one employed as a salaried official, or of any partner of the insured.

"(d) Any loss resulting from any loan made by the Insured, or by any of the employees, whether authorized or unauthorized, unless such loans be made with intent, on the part of such Employee to defraud the Insured.

"(e) Shortage in the teller's cash due to errors; and any such shortage not in excess of the normal shortage shall be assumed to be due to error.

"(f) Any loss of Property confided to the care of the Insured, the Nominal value and description of which have not been ascertained by the Insured before loss.

"(g) Any loss resulting from authorized or unauthorized transactions in foreign exchange arising out of fluctuations in such exchange.

"(h) Any loss of Property contained in customers' safety deposit boxes, unless such loss be sustained through any dishonest act of an identifiable Employee under such circumstances as shall make the Insured legally liable therefor.

"(3)   No statement made by or on behalf of the Insured, whether contained in the application or otherwise, shall be deemed to be a warranty of anything except that it is true to the best of the knowledge and belief of the person making the statement.

"(4)   The Insured shall give to the Underwriter notice of any loss hereunder as soon as possible after the insured shall learn of such loss, and within ninety (90) days after learning of such loss shall file with the Underwriter an itemized proof of claim duly sworn to.

"(5)   The value of any securities for the loss of which claim shall be made hereunder shall be determined by the average market value of such securities on the date preceding the discovery of such loss.   If such securities have no quoted market value their value shall be determined by agreement or by arbitration.

"(6)   No action or proceeding shall be brought under this bond in regard to any loss unless begun within twelve (12) months after the Insured shall learn of such loss, or, in case such limitation be void under the laws of the place governing the construction hereof, then within the shortest period of limitation permitted by such law.

"(7)   In case of recovery, whether made by the Insured or the Underwriter, on account of any loss hereunder from any course other than Insurance or suretyship, the amount of such recovery, less the actual cost and expenses of making the same, shall be applied to reimburse the Insured in full for such loss, and the excess, if any, shall be paid to the Underwriter; and the Insured shall execute all necessary papers to secure to the Underwriter the right herein provided for.

"(8)   The occurrence of any loss or losses hereunder and corresponding subsequent payment of such loss or losses shall not reduce the amount of this bond as to any other loss or losses hereunder, whether occurring before

or after the loss or losses so paid: provided, however, that in no event shall the underwriter be liable on account of any one loss or series of losses caused by the acts or commission of any Employee or person or combination of Employees or other persons, or caused by the same Casualty or event for a greater sum than that specified in Line 5 hereof; and provided further, that upon every sum so paid as a loss hereunder, the Insured shall pay to the Underwriter, upon demand, an additional premium computed pro rata from the date of the giving of the Insured to the Underwriter of notice of loss so paid to the end of the current premium year.

"(9)  If the Insured shall, in the application for this bond, state its intention to carry fidelity suretyship upon any of the Employees, and shall, in the computation of the premium of this bond, receive credit for such suretyship, then, in case loss shall be sustained through the dishonest act of any Employee covered, or stated to be covered, by such fidelity suretyship, the Underwriter shall be liable hereunder only for that part of such loss which is in excess of the amount of fidelity suretyship carried or stated to be carried on such Employee.

"(10)  If the Insured shall hold, as indemnity against any loss covered hereunder, any valid and enforceable security or insurance, other than fidelity suretyship, if any, for which credit has been given in accordance with the preceding Section, the Underwriter shall be liable hereunder only for such proportion of such loss as the amount of this bond bears to the aggregate amount of this bond and such other security and insurance.

"(11)  This bond shall terminate—(a) thirty days after the receipt by the Insured of the written notice from the Underwriter of its desire to terminate this bond, or (b) upon the receipt by the Underwriter of a written request from the Insured to terminate this bond. This bond shall terminate as to any Employee—(a) as

soon as the Insured shall learn of any default hereunder committed by such Employee, or (b) fifteen days after the receipt by the Insured of the written notice from the Underwriter of its desire to terminate this bond as to such Employee.

"Signed, sealed and dated this 9th day of April, 1923."

The modification, omitting caption and signatures, is as follows: "First—By striking from subdivision (f) of Condition 2 the words 'any loss of property confided to the care of the Insured, the nominal value and description of which have not been ascertained by the Insured before loss' and by substituting, in lieu thereof, the following:

"'Any loss of property, unless prior to the occurrence of such loss an Employee or partner of the Insured shall have examined such property and made a record thereof, which shall contain the nominal value and description of such property, and be sufficient for the purpose of determining the amount of such loss. It is understood that this clause shall not apply to any loss of property which the Insured shall show to have occurred on the date of the receipt of such property by or on behalf of the Insured, nor shall it apply to the loss of property owned by the Insured.'

"Such amendment to become effective as of the 15th day of February, 1925.

"Said bond shall be subject to all the terms, conditions, and limitations thereof, except as herein expressly modified.

"Signed, sealed and dated this 28th day of January, 1925."

The demurrer was to the effect that appellant's second amended complaint does not state facts sufficient to constitute a cause of action. The memorandum filed and designated as "Exhibit A" to the demurrer is of the following tenor: (1) The amended complaint fails to

allege facts showing that appellant performed the conditions precedent stipulated in the bond by which appellant was required to give appellee notice of any loss under the bond as soon as possible after appellant learned of such loss; (2) that the amended complaint is insufficient for want of facts in that it shows upon its face that appellant has not performed the condition precedent stipulated in the bond by which appellant was required to file with the appellee, within 90 days after learning of a loss, an itemized proof of claim duly sworn to; (3) that the amended complaint is insufficient in that it fails to allege facts showing that the liability sued upon is not excluded by that portion of the bond which provides that it not cover any loss affected by means of forgery.

The provision of the policy which is controlling in this case reads thus: "The insured shall give to the underwriter notice of any loss hereunder as soon as possible after the insured shall learn of such loss, and within 90 days after learning of such loss shall file with the under-. writer an itemized proof of claim duly sworn to."

The first proposition: Under the facts as pleaded, can this court say as a matter of law that appellant failed to notify appellee of the loss under the bond as soon as possible after the appellant learned of such loss?

The following salient facts as pleaded are applicable to the first proposition: (1) On December 26, 1926, appellant was informed that, during the month of December, 1926, Orwig had misappropriated about $1,200; that no part of the sum had been taken prior to the month of December, 1926, and that the sum of $1,200 was the full amount embezzled; (2) on December 30, 1926, at about 3 p. m., appellant discovered that Orwig had misappropriated an additional $3,300 prior to the month of December, 1926, and that some part or all of it had probably been taken by Orwig prior to February 15,

1926; (3) on December 31, 1926, appellant notified appellee of a probable loss under its bond.

It will be observed, under the facts pleaded, that, when appellant was informed on December 26, 1926, of the misappropriation by Orwig of $1,200, and that such misappropriation was of the month of December, 1926, such loss did not come under the terms of appellee's bond which had expired on February 15, 1926. However, the loss of $3,300 which was discovered on December 30, 1926 did come under the bond, and appellee was liable therefor because, by the stipulations of the bond, appellee agreed to reimburse appellant for losses sustained under the bond if discovered within one year from the expiration thereof—in this case, one year from February 15, 1926.

Referring to the provision of the bond heretofore quoted, we observe "that the insured shall give to the underwriter notice of any loss *hereunder as soon as possible* after the insured shall *learn* of such loss." (Our italics.) The word "learn" is defined as follows: "To gain knowledge or information of; to ascertain by inquiry, study or investigation." Webster's International Dictionary. The word "hereunder" may, it is true, refer to an entire instrument, or to a particular part of the instrument in which it appears. In this instance, and as used in the clause of the bond under consideration, it refers to the entire instrument— the bond and not a particular part thereof. *Pringle* v. *Wilson* (1909), 156 Cal. 313, 104 Pac. 316; 24 L. R. A. (N. S.) 1090; *Hart* v. *Commonwealth* (1924), 207 Ky. 343, 269 S. W. 300. The phrase "as soon as possible," used in the provision of the bond above referred to, means that the insured shall give to the underwriter notice of any loss under the bond within a reasonable time, having in view all the facts and circumstances of the particular case. *London, etc., Accident Co.* v. *Siwy*

(1903), 35 Ind. App. 340, 66 N. E. 481; *Western Assur. Co.* v. *Studebaker Bros. Mfg. Co.* (1890), 124 Ind. 490, 24 N. E. 1041; *Brink* v. *Hanover Fire Ins. Co.* (1880), 80 N. Y. 108; *Fidelity & Deposit Co.* v. *Courtney* (1902), 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193; *Verelst's Admx.* v. *Motor Union Ins. Co.* (1925), 2 K. B. (Eng.) 137, 14 B. R. C. 1019; See 7 Couch, Cyc. of Ins. Law §1538b; 7 Cooley, Briefs on Ins. (2nd. ed.) p. 5755. The word "loss" as used in the above provision of the contract means a pecuniary damage to the insured for which the insurer may, under the provisions of the policy, be liable, though at the time the extent of the loss may not be ascertainable. *Lewis* v. *Commercial Casualty Ins. Co.* (1923), 142 Md. 472, 121 Atl. 259, 28 A. L. R. 1287.

In the case of *American Surety Co.* v. *Pauly* [No. 1] (1898), 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977, the bond sued upon contained the following provision: "That the company shall be notified in writing, at its office in the city of New York, of any act on the part of the employe which may involve a loss for which the company is responsible hereunder, as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer." The Supreme Court, in construing the provision in the above case, quoted and approved an instruction given in the case as follows: "'In considering this issue you are to inquire first, when it was that the plaintiff became satisfied that the cashier had committed dishonest or fraudulent acts which might render defendant liable under this policy. He may have had suspicions of irregularities; he may have had suspicions of fraud, but he was not bound to act until he had acquired knowledge of some specific fraudulent or dishonest act which *might involve* the defendant in liability for the misconduct.'" (Our italics.) That court, in *American Surety Co.* v. *Pauly* [No. 2] (1898), 170 U. S.

160, 18 Sup. Ct. 563, 42 L. Ed. 987, said: "In our judgment, for the reasons stated in the opinion in the former case, it was proper to instruct the jury that the receiver need not have given the required notice on mere suspicion as to acts by Collins involving fraud or dishonesty on his part as president of the bank, but was bound to do so only when satisfied that he had committed some specific act of fraud or dishonesty *likely to involve* loss to the company." (Our italics.)

In the case of *Gamble-Robinson Co.* v. *Massachusetts, etc., Ins. Co.* (1910), 113 Minn. 38, 129 N. W. 131, the court, in construing the provision of a bond providing for notice to be given of any dishonest act of an employee, uses the following language: "Though the insured may have had suspicion of irregularities, or fraud, he is not bound to assume that an employee is guilty of acts of dishonesty until he has acquired the knowledge of such specific fraudulent or dishonest acts as *might involve* the insurer in liability for misconduct." (Our italics.)

In *Fidelity & Deposit Co.* v. *Courtney* (1900), 103 Fed. 599, the bond given by the Fidelity and Deposit Company to the German National Bank read, in part, as follows: "That the employer shall immediately give the company notice, in writing, of the discovery of any *default or loss hereunder*." (Our italics.) One McKnight, an officer of the bank, had taken a large sum of the bank's money. The receiver brought suit on the bond to recover for the several defaults of McKnight. The court, in commenting upon an instruction given by the trial court, said, in part: "We must remember that this obligation was intended to secure the bank against the fraudulent conduct of McKnight in the performance of the duties of his office or position; that McKnight's action, in order to require notice to the company, must have been 'of the discovery of a default or loss under the bond.' While McKnight might have been guilty of

reprehensible conduct, it would not require notice unless such as might result in the loss of security or money or personal property of the bank by fraudulent conduct in the performance of his duties to the bank."

Under the facts as pleaded, the appellant was informed that, during the month of December, 1926, Orwig had misappropriated about $1,200, and that no part of the sum had been taken prior to the month of December, 1926, and that said sum was the full amount embezzled. When the above information was conveyed to appellant, assuming that such information was true and that the appellant was chargeable with knowledge of the embezzlement of Orwig, such information could not have created even a suspicion that such embezzlement would likely cause appellee loss under its bond, for appellee's bond had expired on February 15, 1926, and the embezzlement of which appellant had knowledge was over 10 months subsequent thereto and confined to the month of December, 1926. See *National Surety Co.* v. *Fletcher Sav. & Tr. Co.* (1930), 201 Ind. 631, 169 N. E. 524; *Haas Tobacco Co.* v. *American Fidelity Co.* (1919), 226 N. Y. 343, 123 N. E. 755, 13 A. L. R. 132; *Chapin* v. *Ocean Accident, etc., Corp.* (1914), 96 Nebr. 213, 147 N. W. 465, 52 L. R. A. (N. S.) 227. When the appellant did discover that Orwig had embezzled an additional sum of $3,300, to wit, on December 30, 1926, and that such embezzlement was likely to involve appellee in a loss under the bond, it immediately gave notice of such fact. We hold that this court cannot say as a matter of law under the facts as pleaded that appellant failed to give appellee notice within a reasonable time. *Peele* v. *Provident Fund Society* (1896), 147 Ind. 543, 44 N. E. 661, 46 N. E. 990; *Georgia Casualty Co.* v. *Schrepferman* (1919), 70 Ind. App. 11, 122 N. E. 783; *Employers, etc., Corp.* v. *Light, etc., Co.* (1902), 28 Ind. App. 437, 63 N. E. 54; *Germania Fire Ins. Co.* v. *Columbia Encaustic*

*Tile Co.* (1894), 11 Ind. App. 385, 39 N. E. 304; *Western Assur. Co.* v. *Studebaker Bros. Mfg. Co., supra; Insurance Co.* v. *Brim* (1887), 111 Ind. 281; *Fidelity & Deposit Co.* v. *Courtney, supra.*

It has been stated often in the opinions of appellate courts that, in giving construction to various provisions of an insurance contract, if the several provisions of the contract are "fairly and reasonably susceptible of two constructions, one favorable to the bank and the other to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted." *American Surety Co.* v. *Pauly, supra;* and, in the case of *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 164 N. E. 628, the Indiana Supreme Court, by Judge Willoughby, said: "It is elementary in the construction of insurance policies that where insurance contracts are so drawn as to be ambiguous or require interpretation or are fairly susceptible of two different constructions so that reasonably intelligent men on reading them would honestly differ as to their meaning, the courts will adopt that construction most favorable to the insured."

With the above principles of law in mind, we will proceed to the second specification in the memorandum.

The complaint alleges that, on December 31, 1926, the appellant notified the appellee in writing of a probable loss under the bond; that, on January 20, 1927, appellant filed with appellee its written proof of loss; that, on May 9, 1927, appellant filed with appellee a more detailed proof of loss occurring upon and prior to February 15, 1926, all in form and manner as provided by the terms and conditions of the Banker's Blanket Bond and the modification thereof, and further, that the appellant, on its part, had performed and complied with all the terms and conditions of the Banker's Blanket Bond and the modification thereof. Appellee

readily agrees that, if the pleader had rested upon the above and foregoing allegations, the specification in the memorandum to the demurrer to the effect that plaintiff had not performed the condition precedent stipulated in said bond, by which plaintiff was required to file with defendant, within 90 days after learning of a loss, an itemized proof of claim duly sworn to, would not be well taken. We agree with appellee. It is sufficient to plead generally that a party to a contract has performed all the conditions precedent to be performed by him. §394 Burns 1926; *Fireman's Fund Ins. Co.* v. *Finkelstein* (1905), 164 Ind. 376, 73 N. E. 814.

Appellee takes the position that the particular averments of the complaint overcome the general allegations of performance and that the specific allegations disclose that appellant did not file with appellee a verified proof of claim. In support of its position, our attention is directed to the following allegations of the complaint. "Plaintiff alleges that, by false entries and statements, forged checks and other tricks and devices, said Orwig hid and concealed his embezzlement from plaintiff and plaintiff has been unable to discover the particular dates when each of said misappropriations or embezzlements occurred, or the separate amount of each of same, but that, upon February 15, 1926, and at the time of the expiration of said Banker's Blanket Bond, the aggregate amount of such embezzlement of plaintiff's money by said Orwig was $3,300; and that the various items of said Banker's Blanket Bond were in force and effect, and that no part of said sum was embezzled or taken by said Orwig at any other or different time."

The appellant takes the position that, by the terms of the bond, appellant was required to file a statement itemizing the different kinds of property constituting the loss and the value of each; that the provision of the bond as to itemized proof of claim had no reference to the various

peculations of the dishonest employee, but did require the insured to specify by items the losses which it had sustained on account of such thefts and dishonesty; that the foregoing construction is applicable, for the bond in the present case covered not only money taken by an employee but covered various other kinds of property, viz.: Bullion, bonds, debentures, script, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other securities.

Appellant is not without authority in support of its position. In *Maryland Casualty Co.* v. *First Nat. Bank* (1917), 246 Fed. 892, 159 C. C. A. 164 (*certiorari* denied 246 U. S. 670, 62 L. Ed. 931), the court had before it a bond which contained the following provision: "That notice of any loss covered hereunder shall be sent by telegraph and by registered letter, both addressed to the company, at its home office, Baltimore, Maryland, within ten days after the discovery of such loss; that an itemized statement of such loss shall be filed with the company by the employer within 90 days after the date of said notice of loss; and, if required by the company, the employer shall produce for investigation all books vouchers and evidence in the employer's possession." The action in the above case was for the recovery of the aggregate amount of $22,500 of funds of the bank which it was alleged one Campbell, while in the service of the bank as bookkeeper, by acts of dishonesty appropriated to his own use. The only evidence offered in the trial was that introduced by the bank. The evidence was to the effect that Campbell was continuously an employee of the bank as a bookkeeper from and prior to January 10, 1907 to November 14, 1914; that, between January 10, 1907 and April 10, 1913, he, while in such service, dishonestly appropriated to his own use money of the bank amounting to more than $7,500; that between April 10, 1913 and January 10, 1914, he so misappro-

priated money of the bank amounting to $6,900.57; and that between January 10, 1914 and November 14, 1914, he so misappropriated money of the bank amounting to $6,589.92, including in the last-mentioned sum the item of $1,200, reference to which is made in the opinion. The court said: "It is contended that the plaintiff was deprived of the right to recover for the losses alleged by its failure to comply with the requirement as to filing an itemized statement contained in the condition stated in the bond. . . . The bond insured against losses of 'money, securities or other personal property.' The quoted provision requiring an itemized statement contemplates an enumeration of the things claimed to have been lost. Where money is the only thing claimed to have been lost, it is not to be supposed that it was contemplated that the insured would be required to describe the money lost, or to state exactly when or how the act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or willful misapplication on the part of the employee were committed. Within the time prescribed, the plaintiff furnished to the defendant a detailed account of the loss resulting from the above-mentioned $1,200 check transaction, and also a statement showing the total amount of money claimed to have been lost in consequence of Campbell's fraud and dishonesty, and setting out the exact amount claimed to have been lost during each year covered by the contract sued on. The language of a provision requiring a statement by the insured to the insurer of the loss or losses claimed to have been sustained would have to be very explicit to warrant a conclusion that such requirement is not complied with, unless the statement discloses more than is necessary to be alleged and proved in a suit on the contract to recover for losses claimed to have been sustained, or in a prosecution of the employee for the criminal offense which his alleged misconduct involved.

The evidence showed that the books kept by the plaintiff and remaining in its possession enabled it to ascertain the amount of such losses, and indicated that its inability to ascertain and state how the losses, other than that resulting from Campbell getting credit for the amount of the $1,200 check were brought about, was due to Campbell's successful concealment of his defalcations and of the method of their accomplishment. . . . The conclusion is that the evidence adduced sufficiently showed that, within the time prescribed, the plaintiff furnished such itemized statement of the loss claimed to have been sustained as was called for by the contract."

In *Norton* v. *Rensselaer, etc., Ins. Co.* (1827), 7 Cow. (N. Y.)* 645, the court had before it an action in assumpsit on a valued policy of insurance against loss by fire of merchandise of the plaintiffs. The tenth condition or proposal of insurance annexed to the policy was that "all persons insured, etc., sustaining any loss or damage by fire, are forthwith to give notice to the company, and, as soon after as possible, to deliver as particular an account of their loss or damage, signed with their own hands, as the nature of the case will admit of, and make proof of the same by their oath or affirmation, and by their books of account and other vouchers, as shall be reasonably required." The plaintiffs read in evidence a notice, admitted by the defendants to have been received by them, of the following tenor: That the insured sustained a loss by fire on the property insured to the amount of at least $5,000. The counsel for the defendants insisted that the notice was insufficient and not a compliance with the tenth provision of the insurance contract. The trial court sustained the contention. The court said: "The only question is, whether the notice of the 2nd of March was a compliance with the 10th proposal in the policy. That proposal is brought over from the English policies, where it is held to be a

condition precedent; and the clause connected with it, which relates to the certificate of third persons, has been the subject of several decisions confining the plaintiff with great strictness to the persons named. . . . I am not aware of any case which goes into the form of the notice, and the affidavit of the party. Undoubtedly, these must be furnished, according to the policy, a certain number of days before an action can be brought; but it is another question what they should contain. The clause requiring proof of loss in marine policies has been construed with considerable liberality. The courts have looked to circumstances; and required no more information of the party then what appeared to be within his control. In *Lawrence* v. *The Ocean Ins. Co.* (11 John. 260,) Thompson, J., in delivering the opinion of the court, says the clause 'requires only reasonable information to be given to the underwriters; so that they can be enabled to form some estimate of their rights and duties, before they are obliged to pay. This clause has always been liberally expounded; and is construed to require only the best evidence of the fact which the party possesses at the time. Such has been the uniform construction put upon it by this court.' ''

Again, in *McLaughlin* v. *Washington County, etc., Ins. Co.* (1840), 23 Wend. (N. Y.) 525, McLaughlin gave the following statement to the insurance company: "I hereby forward to you an estimate of my loss by fire, as correct as I can come at the same, viz: *amount of merchandise on hand* when said fire occurred was $1,497.87. Amounts of goods saved $605.29, which are supposed to be damaged in part $54.67. Clothing consumed $53. Amount of produce $19. Thirty half-barrels $4 (TOTAL) $1,639.54. Deduct amount of goods saved $605.25 (leaves) $1,034.07, whole amount of loss as near as we can estimate same. There was no other insurance

on the store nor merchandise. The store was totally destroyed." The policy provided that the assured was required forthwith to give notice of the loss, and within 30 days to deliver a particular account of the same to the secretary, verified by oath. The court said: "This condition is substantially like that of the Insurance Company, passed upon by this court in 7 Cowen 645 that required 'as particular an account as the nature of the case would admit.' The one here requires no more—and the account rendered in that case is not more particular than that furnished here. This clause has always been construed with great liberality, as the party must necessarily often make out the account under embarrassment arising from loss of books, bills of parcels, etc. The clause requires only reasonable information to be given, so that the company may be enabled to form some estimate of their rights and duties, before they are obliged to pay."

In *Bingell* v. *Royal Ins. Co.*, *etc.* (1913), 240 Pa. St. 412, 87 Atl. 955, the court had before it an insurance contract of standard form, which provided that the insured should furnish an itemized statement of the various items of property destroyed, the cash value of each item thereof and the amount of loss sustained. The appellant maintained that the right of the insured to recover for his loss was defeated because he failed to furnish an inventory stating the quantity and cost of each article of damaged merchandise on hand at the time of the fire and the amount claimed thereon. The court said: "In this connection it should be observed that this provision of the policy has reference to the duty of the insured after the fire. . . . In the very nature of things it could not be that the parties to the insurance contract intended this inventory to contain an itemized statement of each article of merchandise in the store at the time of the fire because many of the articles were destroyed by the fire

and no one could with accuracy make an inventory of every article destroyed. The intention of the parties must necessarily govern in the construction of all contracts and it will never be presumed that persons occupying a contractual relation intend that an impossible thing shall be done. It is a general rule that a policy of insurance should be construed most strongly against the insurance company, and in all cases of doubt the contract is to be interpreted in favor of the insured."

When the parties entered into the contract, they knew the devious and cunning methods embezzlers will use to cover their defalcations; they knew that it frequently happens that embezzlers are able, by destruction of records, false entries and other devices, to sufficiently cover up their several items of misappropriations so that it is impossible to determine the particular days and particular amounts of the several embezzlements. It very often happens that the best accountants and bank examiners, after months of labor, are unable to give specific dates and specific amounts of the embezzlements of an employee who has been intrusted each day for a long period of time with large and various sums of money. Such experts, however, are able to prove to a degree of accuracy that the embezzler did, between certain dates, embezzle an aggregate amount of money. The bond sued on will not be construed as meaning that appellant was required to do what was an impossibility; but rather that, within 90 days after learning of the loss, it was to file with the underwriter (appellee) a proof of claim itemized to the extent that was then reasonably possible under the circumstances.

The specific allegations of the complaint do not overcome the general allegation of performance that the appellant made proof of loss in manner and form as provided by the bond.

We do not deem it necessary to enter into a discussion of appellee's third specification. We cannot subscribe to appellee's theory in the construction of the several provisions of the bond relating to forgery, as applied to the several allegations of the amended complaint. The amended complaint is sufficient to withstand demurrer.

Judgment reversed, with instruction to overrule appellee's demurrer to the second amended complaint.