**OHIO CASUALTY INS. CO. v. MILLER.**

**No. 463.**

District Court, E. D. Michigan, S. D.

Sept. 29, 1939.

Rosenburg, Painter & Cristy, of Jackson, Mich., for plaintiff.

H. D. Boardman, of Jackson, Mich., for defendant.

PICARD, District Judge.

This is an action for a declaratory judgment. Plaintiff in 1937 wrote an insurance policy for defendant covering damages sustained by anyone suffering injuries as the result of riding any of defendant's horses, defendant being engaged in running a summer resort near Jackson. It appears from the facts admitted by both parties that one Ethel Eggleston on or about the 9th day of July, 1937, fell off a saddle horse which she had rented from defendant, suffering certain injuries and that plaintiff received no notice of the accident until the 13th day of September following approximately 66 days after the accident happened.

Plaintiff introduced evidence to show that defendant knew as far back as the day it happened that Ethel Eggleston had fallen off one of his horses, although it is not alleged or claimed that the seriousness of her mishap was known to defendant, Miller, or by anyone in his employ. Plaintiff rests its case entirely upon failure of defendant to give immediate notice of the accident so that plaintiff could have investigated, claiming that when it did receive notice in September, the employees of defendant had scattered to different parts of the country, some of them never returning to Jackson or to defendant's employ.

It is admitted that Ethel Eggleston was attended by Jackson doctors and remained in the vicinity of defendant's place of business for about a month after the accident and that in September her attorneys in New York wrote a letter to Jackson attorneys, who happened to be the attorneys usually acting for plaintiff in that community; that this was the way plaintiff got notice of the claimed accident and that it made several attempts to try to investigate after obtaining a waiver. For these reasons they claim the failure of cooperation on the part of defendant in giving notice is fatal.

This case was first set for trial for Wednesday, September 6th, on which day this court was notified by telephone that defendant was sick and accordingly defendant and his attorneys failed to appear. No adjournment was granted but the court notified all attorneys that some showing for adjournment must be made, then setting the case for Friday, September 8th. When no one again appeared for defendant at that time, the court of its own volition gave both attorneys a new notice and set the case for trial on September 12, 1939, notifying defendant that there would be no further adjournment without cause. Again neither defendant nor his attorney appeared. The court then proceeded to take testimony but later permitted newly substituted attorneys for defendant to file a brief. The court has with-held making a decision up to this time pending the advancement of any further citations by the parties.

### The Law.

The main argument advanced by defendant is that this is not a justiciable matter since there is yet no judgment which plaintiff may be called upon to pay, and cites in support thereof the case of United States Fidelity & Guaranty Company v. Pierson, D. C., 21 F.Supp. 678. Upon reviewing the same, however, this court finds that this case was appealed from the district court and is reported in 8 Cir., 97 F. 2d 560, at page 562, the Court of Appeals reversing the lower court's decision. We quote this language from the appeal court:

"The assured was interested in protection from an ultimate liability, and the insurer had a very substantial interest at stake in meeting and measuring that liability if it existed. The obligation to defend was a part of the protection afforded the assured. Its right to defend was also a protection, if availed of, to the insurer. That it regarded this right as vital to its own interests appears from its promise to pay, either upon an agreement to which the assured, the claimant, and it were parties, or upon 'final judgment against the assured after actual trial in an action defended by the company.' The rights and duties defined by this policy are so closely interwoven in both the obligation and the right to defend and the agreement to pay the finally determined liability that they should be considered as a whole, establishing a relationship which from the inception of a possible liability entitled assured to demand and the insurer to deny that the principal part of the insurance, the agreement to indemnify against liability, applies to this case, and hence, entitles plaintiff to prosecute the suit under the Declaratory Judgment Act. The dominant purpose of the contract as a whole must be borne in mind, and any attempt to divide it into distinct, separate parts is to obscure and subvert the intention of the contract and defeat the natural and reasonable expectation of the parties. The controversy here presented involves not only the duty to defend the action, which may end in a liability for a large sum, but the obligation to indemnify the assured against such liability. See Associated Indemnity Corporation v. Manning, [9 Cir., 92 F.2d 168], supra; Farm Bureau Mutual Automobile Ins. Co. v. Daniel, [4 Cir., 92 F.2d 838], supra; Central Surety & Ins. Corporation v. Caswell, [5 Cir., 91 F.2d 607], supra.

"We conclude that the lower court was in error in refusing to entertain jurisdiction and the decree is therefore reversed and the cause remanded for further proceedings consistent herewith."

To this decision might be added a later citation of Ohio Casualty Insurance Co. v. Marr et al., 10 Cir., 98 F.2d 973, in which the declaratory judgment was not permitted where insured had failed to notify plaintiff, but because plaintiff had failed to allege facts in his pleadings showing that an accident had occurred. Also the case of Aetna Casualty & Surety Company v. Yeatts, 4 Cir., 99 F.2d 665, 669, where the court quotes the Pierson case, supra. In the Aetna case, however, the question was whether an injunction of the Federal Court would lie to prevent further action in the Circuit Court. So that although the question is not the same there is enunciation of the federal court adopting the principle of Pierson case, supra.

As has been well said, the declaratory judgment here is governed by federal statute (Jud.Code § 274d, 28 U.S.C.A. § 400) and this court is bound to follow the decisions of the federal court so that even though the case of Wolverine Mutual Motor Insurance Company v. Clark, 277 Mich. 633, 270 N.W. 167, sustained defendant's position, that being interpretation of a state declaratory judgment law, would not supersede the decisions of our federal court. We find therefore that this is a justiciable matter.

The court has also examined the question as to whether it is unreasonable to permit an insurance company to escape liability on its policy just on the question of notice.

It is a well recognized rule that courts do not favor forfeiture of insured's rights in any kind of an insurance contract where there has been substantial compliance with the terms.

The Michigan decisions have held that requirement of "immediate notice" does not apply to every trivial accident even though it may prove afterwards to result in serious injury. Some follow the theory that if no apparent harm came from the mishap and there was no reasonable ground for believing that bodily injury had occurred or would follow, there is no duty upon the insured to notify the insurer. A close examination of those cases, however, indicate that there the insured did not have knowledge of the accident sufficient to require investigation or, having knowledge, there had been no apparent damages sustained for some time after the accident. See Grand Rapids Electric Light & Power Company v. Fidelity & Casualty Company, 111 Mich. 148, 69 N.W. 249. Or in some instances the policy of insurance provides for notice in such a way as to confuse notice of the accident with notice of claim for damages and this the court held is ambiguous. Therefore these cases are construed in favor of the insured.

The court has strong convictions against permitting any insurance company to escape its obligations because of a technicality, which of course is in accordance with the general trend of our courts in protecting the insured and in desiring to discourage insurance companies from litigation of this kind. However, in this particular case there is no doubt about the notice of the accident being received by defendant. In defendant's own brief, on page 7, appears the following as being information Mr. Miller received the following day after the accident: " * * * After the doctor came and we got the report that it was just bruised muscles and sprained ligaments and so on, I think that was what I told him, and I think the doctor said she would be all right in a few days." That alone should have challenged his attention to the possibilities of damages. Mrs. Eggleston was not a young girl and falling off a horse in her case, whether it was the fault of the horse or the fault of Mrs. Eggleston, certainly called for some kind of an investigation on his part. In the statement which he made on the 17th day of September there appears the following: "Just how she happened to fall from the horse I do not know and if there were any witnesses to the accident I do not know who they were. Mrs. Eggleston was taken to a nearby cottage where she and her husband were staying with Mr. Eggleston's brother and his family. Dr. Belleconi and Dr. Shephard were called the next morning but neither came before Mrs. Eggleston was removed to a hospital in Jackson, Michigan."

He then goes on to state that he did not consider her injuries serious, but the knowledge to him that the doctors had been called and that she was at a hospital should have further kindled his interest in the possible effect of that fall.

On the question of notice therefore, the authorities seem to bear out the position of plaintiff. In one instance the court held that failure to report an accident within 27 days was fatal, the court recognizing the need of investigation by the insurance

996

company and the possibility of witnesses disappearing, having faulty memories, or having been influenced by having been talked to by the other side. Smith & Dove Manufacturing Company v. Travelers' Insurance Company, 171 Mass. 357, 50 N.E. 516—27 days; Lewis v. Commercial Casualty Insurance Company, 142 Md. 472, 121 A. 259, 28 A.L.R. 1287—45 days; Hagstrom v. American Fidelity Company, 137 Minn. 391, 163 N.W. 670—52 days; Foster v. Fidelity & Casualty Company, 99 Wis. 447, 75 N.W. 69, 40 L.R.A. 833—29 days; Sweeney v. Travelers' Insurance Company, 199 Mich. 584, 165 N.W. 775—6 months; Rushing v. Commercial Casualty Insurance Company, 251 N.Y. 302, 167 N.E. 450—22 days; Rooney v. Maryland Casualty Company, 184 Mass. 26, 67 N.E. 882—22 days; Palacine Oil Company v. Commercial Casualty Insurance Company, 10 Cir., 75 F.2d 20—5 weeks; Fireman's Fund Indemnity Company v. Kennedy, 9 Cir., 97 F.2d 882—40 days.

The case of Wisconsin Michigan Power Company v. General Casualty & Surety Company, 252 Mich. 331, 233 N.W. 333, 76 A.L.R. 1, is in point and the Michigan Supreme Court in the case of Brogdon v. American Automobile Insurance Company, 290 Mich. 130, 287 N.W. 406, adopts the same principle. This case was decided September 7, 1939.

Other questions are raised by defendant, but none of them we deem is of sufficient importance to discuss further. This court believes that an insurance company should live up to the terms of its policy, but practical experience teaches us that an early opportunity to investigate is essential and that although the insured may be careless with his own rights, the insurance companies usually are not. When they get word of an accident they investigate and properly so for any mist that clouds the atmosphere and may interfere with the proper administration of justice. A lapse of 66 days may permit the mist to gather. We can understand how three, four or five months might elapse between the time of an accident and notice which might not be fatal to an investigation and although the law does not require that the insurance company show that it has been injured by the neglect, in this particular case, the absence of Mrs. Eggleston from the State of Michigan, the absence of the chief witness for defendant after September 13th in the State of Florida, were most detrimental.

All of these incidents combined are sufficient in our opinion to indicate that it would be unfair and inequitable to compel the insurance company now to defend a half prepared case even under any kind of a disclaimer or agreement that might be reached between the parties.

We must therefore, for the reasons cited, hold for plaintiff.

An order may be prepared in compliance with this opinion so that judgment may be entered.