Howard, J.
William A. Peele, Jr., about a year before his death, took out a life and accident insurance policy in favor of the appellant, his wife, in the Provi *542 dent Fund Society,.one of the appellees, which risk was afterwards reinsured by the New England Mutual Accident Association, the other appellee. The complaint filed for recovery of the amount due on the policy alleges the death, by accidental drowning, of William A. Peele, Jr., on the 17th day of December, 1894, he having duly complied with all the terms and conditions of said policy of insurance. The complaint was not challenged in the court below, and is not questioned here.
Each of the appellees filed its special answer to the complaint, averring want of liability for the reason that notice of the accidental death of the assured was not given in due time, as required by the terms of the policy. The answers are quite similar. In that of the Provident Fund Society it is said: “The defendant, the Provident Fund Association, of New York City, for answer to the complaint herein, admits that it is a corporation as in the complaint charged and delivered; that on the day of its date it executed to William A. Peele, Jr., the policy of insurance on his life against accident, a copy of which is filed with and made a part of the complaint, as in the complaint alleged; this defendant further admits that the plaintiff was on said date the wife, and that she is now the widow of said William A. Peele, Jr.; this defendant further admits that the said William A. Peele came to his death on the 17th of December, 1894, by accidental drowning, as in the complaint set forth; this defendant further admits that the said William A. Peele, Jr., during his lifetime, duly performed all the conditions of said policy on his part, as in the complaint charged. But this defendant avers that, notwithstanding the existence of the facts thus expressly admitted, the plaintiff cannot have or maintain her action herein as against this defendant, for the reason *543 following, that is to say: That, as it appears by reference to the copy of said policy so exhibited with the complaint herein the same was issued, and said William A. Peele, Jr., admitted to membership in said society, subject to all the conditions therein endorsed; and this defendant further avers, as will fully appear by reference to the copy of said policy as exhibited with the complaint herein, among the conditions endorsed on the back of said policy was the following, to-wit: ‘Notice of any accidental injury for which claim is to be made under this certificate shall be given in writing, addressed to the president of the society at New York, with full particulars of the accident and injury, and failure to give such written notice within ten days from the date of either injury or death shall invalidate any and all claim under this certificate.’ This defendant avers that the plaintiff was present with said William A. Peele at the time of his death on said 17th day of December, 1894, and on said day knew all the facts and circumstances surrounding his death. And this defendant further avers that notwithstanding the death of said William A. Peele, Jr., on said 17th day of December, 1894, the said plaintiff did not, within ten days thereafter, give notice in writing of the accident, or of the drowning, to this defendant, with the full particulars of the accident and injury; nor did she within ten days from said accident and death give any notice whatever to this defendant either of said accident or death.”
It is then averred that such notice was not given to the society until January 2,1895, being sixteen days after the date of the accident. The letter of appellant’s attorneys, setting out the particulars of William A. Peele’s death and the answer of the New England Mutual Accident Association, calling attention *544 to the fact that the notice was not given within the ten days, are given in the answer. The concluding paragraph of the said appellee’s letter is as follows: “We call your attention to the fact that no notice of the death or injury was given to the Provident Fund Society or ourselves, as required by the provisions of Mr. Peele’s policy. From information thus far received it does not appear that there is any liability under the policy for this death or injury; but, without waiving any rights of defense which this company has to said policy, we write you to enquire if you desire to take any further steps?”
In the answer of the New England Mutual Accident Association further correspondence is given, from which it appears that appellant by her attorneys, in response to said appellee’s inquiry as to further steps to be taken, replied that she desired to take such further steps, saying amongst other things: “If you have blank forms upon which you desire us to make formal proof, you will please forward to us the necessary papers upon which, to make such proof.” The appellee furnished the blanks as requested, repeating its declaration that it did not waive any right to defense by reason of the defect in the notice.
On the overruling of her demurrer to the answer, the appellant filed her reply, from which it appears: That at the time of the death of William A. Peele, Jr., they were living at St. Mary’s, in Vigo county, about four miles from Terre Haute, the county seat; that on said 17th of December, 1894, her said husband expressed his intention to take a bath, whereupon she went into the bathroom in their residence, in which was situated a large porcelain bath tub, and turned the water into the same and made such other preparations as were necessary; that he requested her to return to assist him after he had taken his bath; that *545 after waiting a sufficient time she returned as he had requested and called to him repeatedly to open the door, but getting no response she finally succeeded in effecting an entrance to the bathroom and found him lying unconscious in the water, and, as she then sup-' posed, dead; that by reason of the suddenness and appalling character of the calamity, she was so startled and her nervous system so shocked that she was entirely prostrated, but that in her excitement she gave the alarm to others, who came to her assistance; that some of the attendants thought they observed some feeble signs of life for an hour or more, after which there was no question as to his death; that her grief- and prostration were greatly aggravated by the excitement and sorrow of her little children; that the coroner was sent for and made an examination of the body and an official investigation into the facts surrounding the accident; that the funeral took place on the 19th of December, at Indianapolis, seventy-nine miles distant; that she did not learn the result of the coroner’s investigation before leaving for Indianapolis with the body, that officer’s finding and report not having yet been made; that after the burial her physical condition was such that she was unable to return to her home, or transact any business, until the 24th of December; that she did not know whether her husband’s death was accidental or not, nor was she in such mental condition as to be able to investigate the question; nor did she learn,nor could she have learned, of the result of the coroner’s investigation until she was able to visit the county seat, which was on the 28th of December; that she then investigated all other facts connected with the death not already known to her, and immediately thereafter notified her attorneys, who on January 2,1895, forwarded to the appellee, The Provident Fund Society, the notice mentioned *546 in the answer; that the said William A. Peele, Jr., was well known throughout the State of Indiana, having been chief of the Bureau of Statistics of said State for the ten years preceding his death; that a full account of his death and burial was published in all the leading newspapers of the State; that on the day following his death the fact was known to Norman N. Davidson, a resident of Indianapolis, and the general and State agent of both the appellees, who had full charge of their business in the State, and the fact of the burial was also known to him on the day when it occurred;, that said Davidson knew at all such times of the existence of said policy of insurance, he having delivered the same to William A. Peele, Jr., and having received from him personally all the assessments and dues paid thereon, and being a personal friend of the decedent; that on December 19, 1894, the said Davidson read and cut from the columns of the Indianapolis News, one of the leading papers of said city, a detailed account of the death of the assured by drowning; that he so cut out said newspaper article for the use and information of the appellees; that said general agent, having such information, and a full knowledge of the existence of the policy sued on, and of the fact that the assured had lost his life by accidental drowning, could have made any investigation into the circumstances attending said death, at all times after said 18th day. of December, 1894, and that it was a duty devolving upon him by reason- of his position to make such investigation. Then follow, in detail, copies of all correspondence, proofs of death, newspaper clippings made by the general agent, and other papers passing between appellant and appellees.
The answer, as will be perceived, admits what has beén called the capital fact in insurance cases, that is, the death of the assured by accidental drowning while *547 holding his policy of insurance, all the conditions of which had been duly observed and kept by him. It is not a matter of doubt that an involuntary death by drowning is a death by accident. See cases cited in note to Lovelace v. Travelers’ Protective Assn., 126 Mo. 104, 30 L. R. A. at p. 211, 28 S. W. 877.
The only question raised is, whether the notice of death given by appellant was reasonable, and in time, as required by the condition endorsed on the policy. It will be seen that this condition required that the notice should be given “within ten days from the date of either injury or death,” and also that it should contain “full particulars of the accident and injury.”
In the interpretation of conditions in policies of insurance, courts have looked to the intention and the substantial rights of the parties. A distinction has been made between conditions preceding the loss or accident, and upon which the question of liability primarily rests, and conditions which relate to matters following such loss or accident. The former are more usually of the essence of the contract, and are, therefore, generally interpreted more strictly. When, however, the liability has once accrued, then such conditions as relate to the giving of notice, making proof of loss, etc., that is, conditions subsequent to the capital fact of liability, have, in general, been interpreted as requiring what is reasonably possible on the part of the beneficiary. This is particularly true in case of the death of the assured. In the case of any insurance policy the one who takes out and pays for the policy may well be expected to know its conditions and to comply with them. But in the event of his death, the party suffering the loss is often at a disadvantage, both as to knowing the conditions and as to being able to comply with them according to the strict letter of *548 their terms. See 1 Am. and Eng. Ency. Law (2d ed.), p. 323, and cases cited in notes.
Our statute, section 4923, Burns’ R. S. 1894 (3770, R. S. 1881), declares invalid, as unreasonable, a condition requiring that notice of loss shall be furnished immediately, or within five days. But circumstances, in a given case, may render a requirement for even a longer notice unreasonable. In Insurance Co. v.Brim, 111 Ind. 281, Judge Mitchell said: “What constitutes reasonable diligence or reasonable notice must depend upon all the circumstances of each particular case. Railway, etc., Assurance Co. v. Burwell, 44 Ind. 460; Wood Fire Ins., section 414.”
“The purpose of the notice is to enable the company to take proper precautions for its own protection. The notice must be reasonable under all the circumstances. Where the facts are not in dispute, or when they have been ascertained by the proper tribunal for that purpose, it becomes a question of law for the court to determine whether, under the facts and circumstances of a given case, the notice was reasonable. Where the facts tending to show an excuse for the delay are in dispute, or where it is a disputed question whether the delay was occasioned by certain facts, it is for the jury to ascertain the facts, and the cause and effect of the delay, and, under proper instructions from the court, as to the force and effect of the facts found, determine whether or not, under all the circumstances, reasonable notice of the loss was given. Wood Fire Ins., section 412.”
In Germania Fire Ins. Co. v. Deckard, 3 Ind. App. 361, a notice, in such a case, given .in fifteen days, was held to be reasonable; and in Pickel v. Phoenix Ins. Co., 119 Ind. 291, a notice given in fifty days, without excuse for the delay, was held to be unreasonable.
In Trippe v. Provident Fund Society, 140 N. Y. 23, *549 35 N. E. 316, 22 L. R. A. 432, the insurance company being the same as one of the appellees in the case at bar, and the form of policy and notice being also identical, the court said: “The condition upon which the defense is based was to operate upon the contract of insurance only subsequent to the fact of a loss. It must, therefore, receive a liberal and reasonable construction in favor of the beneficiaries under the contract. McNally v. Phoenix Ins. Co., 137 N. Y. 389. The provision requires not only notice of the death, but Tull particulars of the accident and injury.’ It is quite conceivable that in many cases of death by accident the fact cannot be and is not known until days or even weeks after it has occurred. Such conditions in a policy of insurance must be considered as inserted for some reasonable and practical purpose, and not with a view of defeating a recovery in case of loss by requiring the parties interested to do something manifestly impossible. The object of the notice was to enable the defendant, within a reasonable time after the death or injury, to inquire into all the facts and circumstances while they were fresh in the memory of witnesses, in order to determine whether it was liable or not upon its contract. The full particulars of the death which the condition requires cannot ordinarily be furnished until the fact of death and the manner in which it occurred are ascertained. * * * The parties having contracted that the notice of death should be accompanied by full particulars of the manner in which it occurred, and the attendant circumstances, they evidently intended that it should be given only when the fact and manner of death became known to the parties who were required to act. The fair and reasonable construction of this condition, therefore, is that the ten days within which the notice is to be given did not begin to run from the date of *550 the accident or the disappearance of the insured, but from the time when the body was found, and the important fact of death, with the circumstances and particulars under which it occurred, ascertained. This construction secures to the defendant every benefit and advantage that was intended by this provision of the policy, and it cannot, therefore, complain if the very harsh and technical meaning which it now seeks to put upon a condition subsequent is rejected. The plaintiff was the widow of the deceased and the beneficiary named in the certificate. She was the only party interested in the enforcement of the contract, and who could give the notice, and she could not give it, within the meaning of the condition, until she had knowledge of the facts which she was bound to com: municate. To hold that the plaintiff was bound to give notice of the death of her husband, with full particulars, before she had any knowledge of the facts, would be to require her, by a technical and literal construction, to do an impossible thing, which was not within the intention of the parties when the contract was made. Insurance Companies v. Boykin, 12 Wall. 433.”
The same court, in Paltrovitch v. Phoenix Ins. Co., 143 N. Y. 73, 25 L. R. A. 198, 37 N. E. 639, said: “We have recently held, and I think very properly, that the stipulations of a policy which relate to the procedure merely, after the occurrence of a loss, are to be reasonably and not rigidly construed. McNally v. Phoenix Ins. Co., 137 N. Y. 398. * * * All parties should have their rights in this court fairly and fully; but a severely formal defense, resting wholly upon immaterial matters of procedure ought not to be allowed to work injustice. While we feel bound to enforce these contracts fully and fairly according to their terms, yet, where those terms respect the modes of *551 proof and procedure after the loss, we shall give them always a reasonable and liberal construction, and not a severe and technical one.” See, also, May on Insurance, section 217 ; Hinman v. Hartford Fire Ins. Co., 36 Wis. 164; Hoffman v. Aetna Ins. Co., 32 N. Y. 405.
The facts stated in the reply in the case at bar, and which by the demurrer are admitted to be true, show that the appellant did not and could not know until December 28, 1894, that her husband had died of accident. That fact became known to her only by the finding of the coroner, which she then for the first time saw or could have seen, as shown by the facts stated. Within five days from acquiring this knowledge the required notice was sent to the company. We think that the notice so given was reasonably sufficient, as within the terms contemplated by the parties when the contract was entered into. The “full particulars of the accident and injury,” as required by the condition providing for notice, could not sooner be given.
It is to be observed, besides, that although the appellees may not have had the formal notice within the strict limits of the time provided in the condition, yet the facts show that the companies could not thereby suffer. Through their general state agent they had actual notice, and that most full and complete, within much less than the ten days prescribed by the letter of the condition. The courts do not favor forfeitures of insurance policies. Lyon v. Travelers’ Ins. Co., 55 Mich. 141, 20 N. W. 829, 54 Am. Rep. 354; Insurance Co. v. Norton, 96 U. S. at p. 242.
If the insurer acquires actual knowledge of the accident soon after its occurrence, it is plain that the real purpose of the notice will be served (Roumage v. Mechanics’ Fire Ins. Co., 13 N. J. L. 110); and it does not seem that the insurance contract ought to be so technically construed as to compel the insured, or, still less *552 the beneficiary, to furnish in an unreasonably short time, and under penalty of forfeiture, information which the insurer, by its agent or otherwise, already has. Omaha Fire Insurance Co. v. Dierks, 43 Neb. 473, 61 N. W. 740, and authorities there cited.
The judgment is reversed, with instructions to overrule the demurrer to the reply.
McCabe, J., dissents.