## FIDELITY AND DEPOSIT COMPANY OF MARYLAND *v.* MESKER ET AL.

[No. 15,532.  Filed December 14, 1937.]

Daniel H. Ortmeyer, William Espenschied, and Kane, Blane & Hollowell, for appellant.

Winfield K. Denton, and Louis L. Roberts, for appellee.

CURTIS, J.—This was an action on a fidelity bond denominated in the complaint as an insurance policy in the penalty of $5,000.00 issued to the appellees, a partnership, by the appellant on Georgia Oliver, an employee of appellees, in her capacity as bookkeeper and cashier. On December 26, 1932, she signed a written statement admitting a default. On January 4, 1933, the appellees wrote a letter notifying the appellant of the default. That letter was mailed at Evansville, Indiana, the place of business of the appellees, on January 5th and was received by the appellant at Baltimore on January 7, 1933. On the night of Sunday, January 8th, Georgia Oliver died. On January 10th the appellant at Baltimore sent to the appellees proof of loss form. On February 16, 1933, proof of loss was delivered by the appellees to the appellant, showing an alleged default of $26,715.99.

The complaint, in one paragraph, avers the existence of the fidelity bond upon which the complaint is founded, the breach of the bond and performance by the appellees of all conditions of the bond. Appellees filed an amendment to their complaint by way of a bill of particulars consisting of a summary of the shortage of Georgia Oliver and various exhibits in relation thereto detailing said alleged shortages. The fourth paragraph of answer is a general denial.

The first paragraph of answer avers that the appellees discovered the default prior to October 1, 1932, and did not within ninety (90) days after such discovery file with the appellant proof of loss. The third paragraph of reply is a general denial addressed to the first paragraph of answer. The fifth paragraph of reply avers facts alleged to constitute a waiver by the appellant of the defense set forth in the first paragraph of answer.

The second paragraph of answer alleges that the appellees discovered the default prior to October 1, 1932, and did not notify the appellant of the default within a reasonable time after such discovery. The fourth paragraph of reply is a general denial addressed to the second paragraph of answer. The sixth paragraph of reply avers facts alleged to constitute a waiver by the appellant of the defense set forth in the second paragraph of answer.

The third paragraph of answer avers that the appellees did not within a reasonable time after December 26, 1932, notify the appellant of the default. The first paragraph of reply is a general denial addressed to the third paragraph of answer. The amended second paragraph of reply avers facts alleged to constitute a waiver by the appellant of the defense set forth in the third paragraph of answer.

Upon the issues thus made trial was had before a jury resulting in a verdict for the appellees in the amount of $5,500.00. The motion for a new trial was overruled and the appellant excepted. Judgment was rendered on the verdict that the appellees recover of and from the appellant the sum of $5,500.00, with interest thereon from the 20th day of February, 1935, at the rate of 6% and costs. From that judgment appellant prosecutes this appeal.

The error relied upon by the appellant for reversal is

the ruling on the motion for a new trial. The causes or grounds of the motion that are duly presented in this court are: (1) That the verdict of the jury is not sustained by sufficient evidence; (2) that the verdict of the jury is contrary to law; (3) error in the assessment of the amount of recovery in that the amount of recovery is too large; (4) that the court erred in refusing to give to the jury instruction numbered nine (9) of the instructions requested by the defendant; (5) that the court erred in giving to the jury instruction numbered fourteen (14) of the instructions requested by the plaintiffs; (6 and 7) the failure of the court to give to the jury certain general instructions as requested by the defendant; (8) error of law occurring at the trial and excepted to by the defendant in this, to wit: that the court erred in sustaining the objection by the plaintiffs to the following question asked by the defendant of the witness Henry F. Koch on his cross-examination as a witness:

"would a glance at this ticket or at this daily cash balance in general way, even without taking it out to look at it, have shown the total amount of the items called tickets,"

and which objection was on the grounds that there is no evidence that the witness looked at that sheet, he is not the bookkeeper, and for the further reason it does not cover the direct examination and is not proper cross-examination.

To each of the eight grounds of the motion for a new trial above set out the appellant in its brief under the heading of Propositions and Authorities has addressed an appropriate proposition with points and authorities relied upon to sustain each of them.

The case has been fully and ably briefed and presented by each side. We now take up the specifications of alleged error presented by the appellant in its brief.

Omitting formal parts we set out the allegations of the complaint as follows: "The plaintiffs complain of the defendant and say that the plaintiffs are partners doing business under the firm name and style of George L. Mesker and Company and engaged in the iron and structural steel business; that the defendant is now and was at all times herein mentioned a corporation duly organized and incorporated and engaged in the fidelity and insurance business.

"That on the 23rd day of June, 1928, Georgia Oliver was an employee, as bookkeeper and cashier, of these plaintiffs, as such partners in said business, and so continued until the 4th day of January, 1933. That on or about the 23rd day of June, 1928, the defendant duly executed and delivered to these plaintiffs a policy of insurance wherein and whereby the defendant promised and agreed to reimburse the plaintiffs for all loss which they might sustain up to Five thousand ($5,000.00) dollars caused by said employee, either directly or by collusion with others, through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misappropriation or other acts of fraud or dishonesty committed during a period of two years from said date. That a copy of said policy is attached hereto, incorporated herein, made a part hereof and marked 'Exhibit A'. That said policy was renewed by these plaintiffs from year to year thereafter so that it was in force up to and including the 23rd day of June, 1933.

"That said Georgia Oliver, as such employee and by virtue of such employment had access to and control and possession of a large sum of money in excess of Five Thousand ($5,000.00) Dollars, lawful and current money of the United States of America, the property of these plaintiffs, to the possession of which property these plaintiffs were entitled. That said Georgia Oliver, while in said employ of these said plaintiffs, and while

having access to and control and possession of said money as aforesaid, and by virtue of said employment as aforesaid did, between the 17th day of January, 1929, and the 21st day of December, 1932, unlawfully, feloniously and fraudulently without the consent of these plaintiffs purloin, secrete, embezzle and appropriate to her own use said large sum of money in excess of Five Thousand ($5,000.00) Dollars.

"That these plaintiffs have performed all conditions precedent upon their parts to be performed under said policy and contract of insurance. That the defendant on the 13th day of May, 1933, denied all liability to these plaintiffs for said sum of money or part thereof, and that said sum of Five Thousand ($5,000.00) Dollars is now due and owing from the defendant to the plaintiffs together with interest at the rate of six (6%) per cent per annum to said 13th day of May, 1933.

"Wherefore, the plaintiffs demand judgment against the defendant in the sum of Fifty-Five Hundred ($5,500.00) Dollars and for all other proper relief."

Two provisions of the insurance policy in question which need to be especially noted are found in the first and second paragraphs of Section B. of the said policy. They are as follows:

### "SECTION B.

Notification to Surety of Loss

FIRST: The employer shall notify the Surety by letter or telegram addressed and sent to it at its home office in the City of Baltimore, Maryland, of any default hereunder or of any other fraudulent or dishonest act on the part of any Employee, within a reasonable time after discovery thereof by the Employer, or if a corporation, by any officer thereof not in collusion with such Employee.

Proof of Loss

SECOND: Within ninety days after discovery as aforesaid, of any default causing a loss hereunder the Employer shall file with the Surety affirmative proof of loss form in use by the Surety."

The evidence is not greatly in dispute. No question is made as to the fact of shortage. The employee in question signed written confessions admitting defalcations in excess of $26,000.00. The first of these written confessions was made and signed on December 26, 1932. The amount of the shortage fixed by her on that day was $26,038.37. Two days later she confessed to an additional shortage which brought the total to $26,-715.99. These amounts are not materially in dispute. We set out appellees' exhibit 3 being one of the two confessions signed by her on December 26, 1932. We omit the other four as they are but cumulative in effect. They were each introduced and read in evidence. Exhibit 3 is as follows: "Evansville, Ind. December 26, 1932. I hereby admit that I am guilty of embezzling from the funds of George L. Mesker & Co. the sum of twenty-six thousand thirty-eight and 87/100 dollars ($26,038.87) which is covered by a cash ticket of $24,366.84 and a false entry in check book showing a deposit of $1,672.03 in the Citizens Nat'l Bank on December 16/32 which was never made.

I further wish to state that this confession is made voluntarily and of my own free will.

I further wish to state that no other person connected with or employed by George L. Mesker & Co. had any part in or knowledge of this embezzlement.

Georgia W. Oliver.

Witnessed by
H. F. Koch."

The amounts of the several embezzlements grouped into

periods of time are substantially as we now set fourth to wit: January 17, 1929, to March 26, 1930, $2,400.00; from January 10, 1930, to November 29, 1930, $5,139.-45; from December 10, 1930, to January 10, 1931, $898.00; from May 5, 1931, to January 14, 1932, $4,-969.02; from January 11, 1932, to October 14, 1932, $10,898.15, and in November and December, 1932, $2,349.15, making a total of $26,651.15.

That the insurance policy sued upon was in full force and effect at the time of the embezzlement is not questioned. The immediate events leading to the discovery by the appellees of the embezzlements were that the defaulting employee at Christmas vacation 1932 overdrew her own personal account at one of the Evansville banks. She was spending her vacation with friends in Kentucky. Her personal check was in favor of a man named Tom Gabriel. Upon investigation it was found that she had written other personal checks to him. She had also informed Mr. Koch who was manager of the appellees' business that she was engaged to be married to one Mat Lear. She had also exhibited to Koch a diamond ring and a check for $1,000.00 purporting to have been presented to her by Lear. These matters aroused the suspicions of a Mr. Stump who was also an employee of the appellees in their office and he, together with Koch, decided to examine the books of the appellee. This they did on Christmas Day, 1932. They, at that examination, discovered a shortage covering a period of thirty days of approximately $1,700.00 and immediately a telegram was sent to her asking her to report to the office on Monday, December 26, 1932. It was then that she confessed.

The business of the appellee was done as a partnership composed of George L. Mesker and Elizabeth Mesker. Henry Koch was manager of the said business but had no financial interest in the business. He had many

other business interests and was described as a very busy man. He is not a bookkeeper but hires that service performed by others. There were something like thirty other employees in the office of the appellees doing the necessary work including clerical work. The said Georgia Oliver was the bookkeeper and cashier for the appellees.

It is to be noted that on Christmas Day, 1932, Koch and Stump, both employees of the appellees, discovered a $1,700.00 shortage of Miss Oliver. On the Monday following which was December 26, 1932, in response to a telegram from the appellees Miss Oliver returned to the office and later that day confessed to embezzlement of the partnership funds. On December 28—two days later— she made her final confession. On January 4, 1933, which was seven days later the letter was written to the appellant by the appellees notifying the appellant of the default. This letter reached the appellant at Baltimore on January 7. The next day, January 8, Georgia Oliver died. On January 10 the appellant sent to the appellees proof of loss form. This proof of loss was delivered by the appellees to the appellant on February 16, 1933, showing an alleged shortage of $26,715.99. These matters were all before the jury. By the verdict the jury decided that the appellees gave reasonable notice of the default and made timely proof of loss. We are asked to set the verdict aside and to hold as a matter of law that the notice given as above indicated was not within a reasonable time as required by the policy and that the proof of loss was not timely. The provisions of the policy heretofore set out show that proof of loss must be made within 90 days after discovery of any default causing a loss. If December 25, 1932, be fixed as the day of such discovery then certainly the proof of loss submitted on February 16, 1933, came well within the 90 day provision. Also we are

unable to say as a matter of law that the notice of default was not given within a reasonable time as provided in the policy. The number of days elapsing from December 25, 1932, to January 5, 1933, would be 11 days but in those days would be 3 full holidays and one half holiday. If December 28, the day when Miss Oliver's confession became complete, be fixed as the day of the discovery of the loss then the elapsed time would be 8 days including therein 2 full and one half holidays. Under any of these facts we would not be warranted in holding as a matter of law that the notice was not timely given. See: *Andrews* v. *Minter Coal & Coke Co.* (1929), 90 Ind. App. 320, 168 N. E. 869; *Fletcher Sav. & Trust Co.* v. *American Surety Co.* (1931), 92 Ind. App. 651, 175 N. E. 247; *Germania Fire Ins. Co.* v. *Deckard* (1891), 3 Ind. App. 361, 28 N. E. 868; *National Surety Co.* v. *Fletcher Sav. & Trust Co.* (1930), 201 Ind. 631, 169 N. E. 524; *Peele* v. *The Provident Fund Soc.* (1897), 147 Ind. 543, 44 N. E. 661, 46 N. E. 990; *Insurance Co. of North America* v. *Brim* (1887), 111 Ind. 281, 12 N. E. 315; *Metropolitan Ins. Co.* v. *Peoples Trust Co.* (1912), 177 Ind. 578, 98 N. E. 513; *Metropolitan Life Ins. Co.* v. *Frankel* (1915), 58 Ind. App. 115, 103 N. E. 501; 7 Cooley's Brief on Insurance (2d Ed.) p. 5917; 2 Bacon, Ben. Soc. & Life Ins. (3d Ed.) 405.

We believe that the appellees have fairly stated what the evidence showed as to the manner and method of the defalcations. We quote from their brief as follows: "The method by which Miss Oliver concealed her defalcation is somewhat complicated. To summarize it as briefly as possible, we might state that same covered three stages. (1) She covered the same up first in the bank account. That is, she covered up the shortage by showing on the check stubs and other records in appellees' company deposits in the bank when no such deposits were made. During this period, of course, the

shortage was the difference between the actual bank balance and what the records in the office of the Mesker Co., appellees, showed this to be. (2) She then washed out this discrepancy by not showing on the records in the Mesker Company deposits actually made. (3) When she had then squared the records in the actual bank balance in the bank with the records in appellees' office, she threw this shortage into an item called tickets on the daily cash balance tickets, . . . She repeated this process in six different cycles or six times, embezzling in this manner" the sums of money heretofore set out in this opinion.

"In regard to the daily cash statements, often referred to as tickets, it was the custom in the George L. Mesker Company, appellees, for the bookkeeper to make a daily cash statement. It was copied from the cash book . . . On the left-hand side was entered cash received and on the right-hand side, cash disbursed. On the left-hand side appears the cash on hand at the first of the month, and next the cash received up to that time. On the right-hand side are four or five items undesignated on the daily cash statements but corresponding to various items of expense shown in the cash book, as general expense, merchandise, wages, freight, etc. Then follow the bank balance, cash, an item called tickets and then checks. It was into this item called tickets that Georgia Oliver threw the shortage at these washing out periods. The item 'tickets' included advances made to salesmen when they went on trips which would be adjusted when they returned, advancements made to the Mesker-Koch Investment Company, representing investments which Mr. Koch made for Mr. Mesker, and advancements made to Mr. Koch—his salary was based on a percentage of the profits of the business, investments of appellee, George L. Mesker, and advancements to other or affiliated companies. These daily cash statements were

placed on a hook in the vault and were never examined by Mr. Koch until after the shortage was discovered."

Among others of these daily cash statements the statements for January 22, 1932, and for the following day were introduced into evidence. The January 22 statement showed tickets amounting to $33,-071.05, and the January 23 statement showed tickets amounting to $13,491.03. The appellant argues that from these two statements and the evidence relating thereto there was a conclusive showing that Koch the manager knew or should have known at that time that there was a shortage of $13,491.03, and that it was the shortage of Georgia Oliver. We have read all of the evidence relating thereto and we believe that the knowledge of Koch or his negligence, if any, in gaining such knowledge, was a question for the jury even if it should be conceded that his knowledge would be the knowledge of the appellees. In connection with this phase of the case the appellant argues the point that these two statements and the other evidence showed that Koch thus knew of the shortage of the employee Oliver on January 23, 1932, and since no notice was given the appellant thereof and no proof of loss made for almost a year afterward that there can be no recovery under the policy. The appellant must fail on this theory for two reasons; first, the knowledge of Koch if any or his alleged negligence in obtaining such knowledge were questions of fact for the jury, and secondly, there is no showing that the appellees Mesker and Mesker had any knowledge whatever of the speculations of the employee Oliver until after December 25, 1932. Koch was only another employee of the appellees. He was the local manager at Evansville, Indiana. He had no financial interest in the business of the partnership conducted by the appellees. Even if the facts had shown that he had notice of the default on January 23, 1932, yet a surety on a bond given to an

employer insuring against loss to the employer from fraud or dishonesty of an employee is not relieved from liability for loss within the conditions of the bond by reason of laches, neglect or knowledge on the part of a manager of the employer unless said laches, neglect or knowledge amounts to fraud or bad faith against the surety. In *Fidelity & Deposit Co.* v. *Courtney* (1902), 186 U. S. 342, 22 S. Ct. 833, 46 Law Ed. 1193, the Supreme Court of the United States said (p. 360) : "It is well settled that, in the absence of express agreement, the surety on a bond given to a corporation, conditioned for the faithful performance by an employee of his duties, is not relieved from liability for a loss within the condition of the bond by reason of the laches or neglect of the board of directors, not amounting to fraud or bad faith, and that the acts of ordinary agents or employees of the indemnified corporation, conniving at or cooperating with the wrongful act of the bonded employee, will not be imputed to the corporation. *United States* v. *Kirkpatrick* (1824), 9 Wheat. 720, 736; *Minor* v. *Mechanics' Bank* (1828), 1 Pet. 46; *Taylor* v. *Bank of Kentucky* (1829), 2 J. J. Marshall (Ky.), 564; *Amherst Bank* v. *Root* (1841), 2 Metcalf, 522; *Louisiana State Bank* v. *Ledoux* (1848), 3 La. Ann. 674; *Pittsburgh, Fort Wayne & Chicago Ry. Co.* v. *Shaeffer* (1868), 59 Penn. St. 350, 356; *Atlas Bank* v. *Brownell* (1869), 9 Rhode Island, 168. The doctrine of these cases is thus epitomized in 59 Penn. St. 357 :

'Corporations can act only by officers and agents. They do not guarantee to the sureties of one officer the fidelity of the others. The rules and regulations which they may establish in regard to periodical returns and payments are for their own security, and not for the benefit of the sureties. The sureties, by executing the bond, became responsible for the fidelity of the principal. It is no collateral engagement into which they enter,

dependent on some contingency or condition different from the engagement of their principal. They become joint obligors with him in the same bond, and with the same conditions underwritten. The fact that there were other unfaithful officers and agents of the corporation, who knew and connived at his infidelity, ought not in reason, and does not in law or equity, relieve them from their responsibility for him. They undertake that he shall be honest, though all around him are rogues. Were the rule different, by a conspiracy between the officers of a bank or other moneyed institution, all their sureties might be discharged. It is impossible that a doctrine leading to such consequences can be sound. In a suit by a bank against a surety on the cashier's bond, a plea that the cashier's defalcation was known to and connived at by the officers of the bank, was held to be no defense. *Taylor* v. *Bank of Kentucky*, 2 J. J. Marsh 564'."

The appellant contends also that there was error in the amount of the recovery in that it is too large. In this connection it refers to the evidence as to a recovery by the appellees upon three insurance policies upon the life of Georgia Oliver. The provision of the policy in the instant case in that respect is that: "In case of recovery, whether made by the Employer or the Surety, on account of any loss hereunder from any source (other than suretyship and other than reinsurance collateral or indemnity taken by the Surety for its own benefit), the net amount of such recovery, less the actual cost and expense of making same, shall be applied to the reimbursement of the Employer in full for such loss, and the excess, if any shall be paid to the Surety and the Employer shall execute all papers required by the Surety, and render all assistance, not pecuniary, to secure to the Surety the rights herein provided for." While the evidence is not entirely clear as to just how much was realized by the appellees from that

source yet there was evidence from which the jury could conclude that it was a very small sum compared with the defalcations. We think there was thus sufficient evidence before the jury for them to conclude that the penalty in the policy of insurance or bond was not thereby reduced below the amount of the verdict.

It is thus seen that the verdict of the jury is sustained by sufficient evidence and the amount of the recovery was not erroneous. The verdict must therefore stand unless it is one that is contrary to law, that is, contrary to the principles of law as applied to the facts which the jury was called upon to try. The appellant has made no sufficient showing to that effect. But the appellant in effect also says that the verdict was erroneously affected by an error or errors of law occurring at the trial in the manner complained of by it in its assignment of error. In that connection complaint is made that the court erred in failing to give what the appellant terms general instructions; that the court erroneously gave instruction number 14 of the instructions tendered by the appellees and refused to give instruction number 9 tendered by the appellant. Complaint is also made as to one ruling on the evidence as has heretofore been indicated. The appellant contends that the jury was mislead to the appellant's detriment by the giving of said instruction number 14 and the refusal to give said instruction number 9, each of which instructions related to the matter of the recovery by the appellee upon the insurance policies heretofore mentioned upon the life of Georgia Oliver. We have examined the evidence and the two complained of instructions and we cannot say that the verdict was erroneously affected by instruction number 14 which was given or by the refusal to give said instruction number 9. In view of the large defalcation which the confessions admitted and the relatively small amount of the recovery upon the in-

surance policies upon the life of the defaulting employee we would not be inclined to reverse the judgment upon the grounds raised as to said instructions where it is so apparent that no harm was done the appellant. Even if it were to be assumed for the sake of argument that there was error in the giving of said instruction number 14 and the refusal to give said instruction number 9 yet where the record shows that the cause was fairly tried and determined such errors would not be ground for reversal. See: *Pittsburgh, etc., R. R. Co.* v. *Rushton* (1929), 90 Ind. App. 227, 149 N. E. 652; *Ferger* v. *Interprovincial Flour Mills* (1923), 80 Ind. App. 248, 140 N. E. 450; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577; Sec. 2-3231 Burns 1933, §505 Baldwin's 1934. Upon the whole we think that the jury was fully and fairly instructed. There was no error in the complained of ruling on the evidence. In the main the evidence sought to be elicited would, at most, have been cumulative of other evidence admitted.

The appellees have earnestly insisted that the appellant has waived the main defenses asserted by it by its conduct in relation to the proof of loss and in demanding of the appellees that they cause to be made an expensive audit of the appellees' books costing several hundred dollars which served only to verify the said defalcations confessed to by the employee. While there may be much of merit in this contention, yet we have not found it necessary to consider it specifically in the determination of the case or to base the decision thereon.

As we view the record the correct result was reached and this aids us in our conclusion to affirm the judgment.

The death of one of the appellees since the submission of this cause in this court has been suggested and the judgment is therefore affirmed as

at the term when the submission was made without any change of parties. See Sec. 2-3235 Burns 1933, §510 Baldwin's 1934.