## Clime v. Prudential Insurance Co. of America

*Webster S. Achey,* for plaintiff.
*Ross & Ross,* for defendant.

BOYER, J., April 3, 1944.—This action was brought by plaintiff against the defendant insurance company upon a life insurance policy with double indemnity in case of accident, to recover upon the accident feature of the policy, the life indemnity having been voluntarily paid by defendant. The double indemnity clause under which the company agreed to pay for accidental death was as follows:

"Upon receipt of due proof that the insured, after attainment of age 15 and prior to the attainment of age 70, has sustained bodily injury, solely through external, violent and accidental means occurring after the date of this policy and resulting in the death of the insured within 90 days from the date of such bodily injury while this policy is in force . . ."

Upon the trial of the case, the jury returned a verdict in favor of plaintiff for $333.36, the amount of her claim and interest; whereupon these motions were filed by defendant.

The facts of the case were quite simple and practically undisputed. Plaintiff had taken out a policy of insurance upon the life of her daughter, Martha E. Reed, in the sum of $301, with a like additional sum, or double indemnity, to be paid in case of accidental death, plaintiff being the beneficiary named in the policy. On December 1, 1941, at about five o'clock in the afternoon, plaintiff's daughter, the insured, went to the second floor of their home in Doylestown for the purpose of taking a bath. The mother was preparing supper in the kitchen on the first floor of the home. No one heard any sounds or calls from the second floor. About half an hour later plaintiff sent another daughter upstairs to call the insured. Not getting any response to her knock on the bathroom door, she entered

and found the insured lying in the bathtub with her face and part of her body submerged in 10 or 12 inches of water and apparently unconscious. She called for help and the body of the insured was taken from the tub and placed on the bathroom floor. A physician was called who examined her and at once pronounced her dead from drowning. The undertaker, who later removed the body, made a post-mortem examination of her lungs and found that they were filled with water. The doctor who had examined the body testified that, from his own examination and from the fact that water was found in the lungs of the body of the insured, he was definitely of the opinion that death had been caused by drowning. No other expert testimony was produced on this subject. It further appeared from the testimony of plaintiff herself and others that the insured had been suffering for several years from epilepsy and was subject to occasional convulsions or epileptic fits, varying from once or twice a day to once in two weeks. There was no direct evidence of any kind that the insured had suffered from such a fit while taking her bath, or that she had shown any signs from which such a fit was anticipated at that time by the other members of the family. A finding that she had suffered a convulsion would have been entirely conjectural, although reasonable.

It was the theory and contention of defendant, and so argued before the jury, that the insured had suffered an epileptic fit while taking a bath and that by reason thereof she had either fallen into or become submerged in the water while unconscious and thereby drowned. It was further defendant's legal contention that if that was true the drowning was not an accident within the meaning of the double indemnity clause of the policy. The trial judge did not submit the case to the jury on defendant's above theory as to the law, but instructed the jury that, even if the drowning happened as contended by defendant, it would be liable under its policy for accidental death and instructed

them generally that if they found that the insured was drowned and that the drowning was accidental, whether caused by convulsions or not, they should render a verdict in favor of plaintiff. The court adhered to the same theory as to the law in refusing certain points for instruction submitted by plaintiff.

We do not feel that the motion for judgment non obstante veredicto requires much consideration. For the purposes of passing upon that matter we must view the evidence in a light most favorable to plaintiff and draw all inferences therefrom: McFadden v. Pennzoil Co., 341 Pa. 433, 436; Frank v. Reading Co., 297 Pa. 233, 236; Vendig v. Union League of Philadelphia, 291 Pa. 536; Dunbar v. Preston et al., 285 Pa. 502. That being true, the jury could well have found under this evidence that the insured died "from bodily injury, solely through external, violent and accidental means", to wit, from drowning, but that the cause of the accident was unknown; in other words, that this was a death resulting from an accident which occurred through an unknown cause. Since the jury could have made such a finding favorable to plaintiff, which would have been sufficient to sustain their verdict, a judgment for defendant n. o. v. cannot be entered on this record.

That brings us to what we deem to be the real legal question involved, namely, whether the court should have instructed the jury, and should have affirmed defendant's points, to the general effect that, if the jury found that the insured suffered an epileptic fit and by reason of. the fit fell into or was submerged in the water of the bathtub and thereby drowned, their verdict should be for defendant. If the answer is in the affirmative, then the court erred in its charge and in its answers to defendant's fourth and fifth points and a new trial must be granted. If answered in the negative, the motion must be dismissed.

This question appears to be new in this State. No Pennsylvania case has been cited by counsel, nor have we been able to find any Pennsylvania case relieving

an insurer against death by accident from liability under its policy on the ground that the accident, resulting in death, was caused by some physical disease, ailment, or mental defect. This seems strange, if not significant, in view of the fact that so many fatal accidents occur as a result of vertigo, fainting spells, convulsions, defective vision, temporary blindness, lameness, weak ankles, cramps, senility, absent-mindedness, inattention, etc. The Pennsylvania cases which defendant particularly stresses in its brief are cases in which the policy contained the usual exception or proviso as to disease, and are, therefore, of no aid in this case. The dearth of decisions in this State on this subject may be due to the large number of decisions and apparent unanimity of opinion in other jurisdictions.

The first and most important consideration in this case is the language of the double indemnity clause of the policy on which this suit was brought. The important and operative words as to the kind of accident against which insurance is afforded are ". . . bodily injury, solely through external, violent and accidental means . . . resulting in the death of the insured . . ." In most of the cases in other jurisdictions to which we have been referred, the controversy arose under exceptions added to the indemnity clause to the general effect that there was to be no liability if such accident was caused directly or indirectly, wholly or in part, by, or in consequence of, physical disease or infirmity. There is no such exception or proviso in this policy. The cases seem to concede that where such exception does not appear the liability for the accidental injury is absolute, regardless of what mental or physical defect may have caused the accident.

The authorities appear to be unanimous that, in general, drowning, unless with suicidal intent, is an accident, and death from drowning is an accidental death within the general intent of all policies insuring against death by accident. Involuntary drowning has

been held to satisfy the condition of the contract that death must be by accident in the following cases: Peele v. Provident Fund Soc., 147 Ind. 543, 44 N. E. 661, 46 N. E. 990; MacDonald v. Refuge Assur. Co., 17 Sc. Sess. Cas. (4th series), 955; Tucker v. Mutual Beneficial Life Co., 4 N. Y. Supp. 505, affirmed in 24 N. E. 1102; De Van v. Commercial Trav. Mut. Acc. Assn. of America, 36 N. Y. Supp. 931, affirmed in 51 N. E. 1090; United States Mutual Accident Assn. v. Hubbell (Ohio), 47 N. E. 544; Winspear v. Accident Ins. Co., Ltd., L. R., 6 Q. B. Div. 42; Wehle v. United States Mutual Accident Assn. of N. Y. City (N. Y.), 47 N. E. 35; Clark v. Iowa State Traveling Men's Assn. (Iowa), 135 N. W. 1114, 42 L. R. A. (N. S.) 631; Donnell v. Prudential Life Ins. Co. of America (La.), 160 So. 828; Knickerbocker Cas. Ins. Co. v. Jordan (Ohio), 11 Ins. L. J. 475; Trew v. Railway Assurance Co. (Eng.), 6 Hurl. & N. 839, 158 Eng. Rep. 346; Reynolds v. Accident Ins. Co. (Eng.), 22 L. T. N. S. 820; Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. 945, 22 L. R. A. 620; Sturm v. Employers' Life Assurance Corp., Ltd., 212 Ill. App. 354; Baciocco v. Prudential Ins. Co. of America et al. (D. C. Cal.), 22 F. (2d) 700, affirmed in 29 F. (2d) 966, which had certiorari denied in 279 U. S. 854.

The nearest to a parallel case that we have been able to find anywhere is that of Donnell v. Prudential Life Ins. Co. (La. Ct. of App.), reported in 160 So. 828, etc. This case is peculiarly helpful in that the double indemnity clause for accidental death benefit was identical with that of the policy in the case before us, the operative words being: ". . . bodily injury, solely through external, violent and accidental means . . . resulting in the death of the insured . . ." It is further parallel in that the insured was admittedly "subject to epileptic fits or convulsions". Likewise, as in this case, there was "absolutely nothing, however, aside from conjecture based on the decedent's medical history to show that he suffered an attack of epilepsy

at the time he was drowned". The only difference between the two cases lies in the fact that in that case the insured was drowned in a Y. M. C. A. swimming pool instead of in a bathtub. In that case it was held that the death of the insured was "due solely to accidental means within double indemnity provision of policy, regardless of whether insured had epileptic fit or convulsions while in swimming pool and drowned as result thereof". By reason of the striking similarity of that case to ours, we quote at length from the opinion of the Court of Appeals, as follows (p. 830) :

"But assuming arguendo that the record disclosed affirmatively that Donnell had an epileptic fit or convulsion while in the pool and therefore drowned, can it be said that this death was not due *solely* to accidental means? We think not, because the fit or convulsion would not have contributed to the death, but only to the drowning, as distinguished from a heart attack or some other fatal occurrence which contributes directly to the death itself. In other words, if a person, while in swimming, merely fainted or suffered what is commonly termed a cramp and while thus unconscious drowned, it could not be said that the death was not solely accidental, but in the case of a heart attack or some other fatal disease death would be brought about whether the attack occurred in the water or on shore and in such a case death is not solely accidental.

"In the case of Konrad v. Union Casualty & Surety Co., 49 La. Ann. 636, 21 So. 721, 723, death by drowning was held to be caused 'by external, violent and accidental means.' There, the Court said: 'Death by accident' is defined as an unexpected event,—not according to the usual course of things. Applying this definition, it has been held, that where a person is drowned while bathing, it is accidental death, although no proof is offered of the circumstances.

" 'Trew v. Railway Passenger Association, 6 Hurl. & N. 839. Also, where the insured fell in a fit in shallow water and was drowned, it was held to be a death by external and material causes.' "

Another interesting case because of some similarity to the present case is that of Sturm v. Employers' Liability Assurance Corp., 212 Ill. App. 354. Unfortunately, we do not have access to the reported case, but quote the references to it as found in the Third Decennial Digest, vol. 16, p. 486, key 466:

"Where insured was found dead in a bathtub, the fact that he may have been diseased and that his abnormal condition may have led to his falling into the tub and being drowned would not prevent a recovery on the policy, since, if he came to his death by drowning, legally that was the sole cause of his death."

In Knickerbocker Cas. Ins. Co. v. Jordan (Ohio Dist. Ct.), 11 Ins. L. J. 475, 42 L. R. A. (N. S.) 632, where the insured, an expert swimmer, while bathing with another called for help, disappeared under the water, and was drowned in such a position as to indicate that he had been seized by a fit or cramps, it was held that his death was due to "outward force and accidental means" within the meaning of the policy. In that case the court said (p. 479):

"A person afflicted with epilepsy may, and they do, fall frequently in a spasm but soon recover and apparently suffer no evil effects therefrom, but if by chance he is seized and falls from his horse or wagon into the water, and taking water into the lungs through breathing, suffocation or asphyxia is produced and death follows therefrom, very properly we think the action of the water in cutting off or stopping respiration is an external force, and is the immediate cause of death, and not the spasm.

"Now, whether Cheek was seized with a fit or cramp in the arms or limbs or both does not clearly appear. In the light of these English cases it would make no difference, the immediate cause of death being drowning."

The cases in which the courts appear to recognize the principle contended for by this defendant, that it is not liable upon its policy if the accident was caused

by bodily disease or infirmity, will be found to have been those cases in which the policies contained the exceptions to liability above referred to. A leading case in point is that of Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. 945, 22 L. R. A. 620. In that case a part of the exception to the insurer's liability included "accidental injuries or death resulting from or caused, directly or indirectly, wholly or in part, by or in consequence of fits . . . or any disease . . ." The decedent, while on a camping trip, was last seen alive fishing in a trout stream and was next seen lying submerged in six inches of water, dead from drowning. The evidence indicated that the deceased must have been unconscious when he fell into the water, the cause of unconsciousness being unknown. A verdict for the plaintiff was sustained, notwithstanding the exception in the policy, on the ground that the jury might have found that his fall was not caused by disease. The court, by Taft, Circuit Judge, cited Winspear v. Accident Ins. Co., Ltd., 6 Q. B. Div. 42, in which the policy contained a similar exception and in which "the insured was seized with an epileptic fit and fell into a stream, and was there drowned while suffering from a fit. It was held that the death was within the risk covered by the policy, and that the proviso did not apply".

That court further cites the case of Lawrence v. The Accidental Ins. Co., Ltd., 7 Q. B. Div. 216, in which the policy also contained an exception against accident by "fits, or any disease whatsoever". In that case "the insured, while at a railway station, was seized with a fit and fell forward off the platform across the railway, when the engine and carriages which were passing went over his body, and killed him. It was held that 'the death of the insured was caused by an accident, within the meaning of the policy, and that the insurers were liable.' " The court further quotes from page 222 of the Lawrence case as follows:

"I therefore put my decision on the broad ground that, according to the true construction of this policy and this proviso, this was not an act arising from a fit, and therefore whether it contributed directly or indirectly, or by any other mode, to the happening of the subsequent accident seems to me wholly immaterial, and the judgment of the court ought to be in favour of the plaintiff."

These two cases of Winspear v. Accident Ins. Co. Ltd. and Lawrence v. Accident Ins. Co. Ltd. supra, were cited with approval by Mr. Justice Gray in Accident Insurance Company v. Crandal, 120 U. S. 527. On this general subject of liability under an accident policy for death by drowning, see 5 Couch's Cyc. of Ins. Law, sec. 1149, p. 4035, etc.

We conclude, in the absence of any known authority to the contrary, in this or any other jurisdiction, that under a general accident insurance policy without an exception or proviso similar to those above referred to, where the insured dies of involuntary drowning, the insurer is liable regardless of any physical disease or infirmity which may have caused the accidental drowning. All of the exceptions relating to this subject must be dismissed. We may add here that there was no defense or contention of drowning by suicide set up in this case, and no exception taken to the charge of the court on that subject.

The only other exception pressed at argument related to a ruling of the court excluding the coroner's certificate of death offered by defendant "as an admission against interest" by plaintiff. The alleged admission against interest was the coroner's statement that the drowning was "due to epileptic convulsions". The coroner was not a medical doctor but a veterinarian. Under the view of the law as above expressed, that statement, even if true, is immaterial and the offer, therefore, was properly overruled as incompetent and immaterial. We may add, however, that this was an attempt to get before the jury, by a basement window,

under the guise of an admission against interest, the medical opinion of a "horse doctor" that a specific physical ailment of the deceased caused the accident. The coroner's certificate was not attached to the proofs of death or signed by plaintiff. Defendant's agent testified that he received the coroner's certificate from plaintiff without a word of testimony as to how, when, where, why, or under what circumstances she gave him the certificate, or that plaintiff had read the certificate or had the slightest knowledge of what it contained, or had any knowledge whether the coroner was a physician. It is a fair inference that plaintiff furnished the coroner's certificate upon the request or demand of the defendant company, inasmuch as defendant's agent referred to it as a part of the "proofs of death". The offer of this separate paper as a "declaration against interest" by plaintiff is, under the circumstances, so manifestly unjust, unfair, and such distortion of the rules of evidence that it does not require further discussion.

Now, April 3, 1944, the motion for judgment non obstante veredicto is overruled.

Now, April 3, 1944, the motion for a new trial is dismissed and a new trial is refused.